**Roy Thomas JOHNSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Nov. 25, 1980.

Jack E. Farley, Public Advocate, Sara L. Collins, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., C. David Clauss, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

The appellant, Roy Thomas Johnson, was indicted by the Fayette County Grand Jury on September 10, 1979, for the offenses of burglary in the first degree, robbery in the first degree, and for being a persistent felony offender in the first degree, all of which

grew out of an attempted robbery of the Blue Grass Shade Company, of Lexington, Kentucky, on August 7, 1979. Prior to trial the Commonwealth's Attorney made a motion to dismiss the burglary charge, which was granted. Trial on the remaining charges was held on October 24, 1979. The jury returned a verdict finding appellant guilty of first–degree robbery and fixed his punishment at 15 years' imprisonment. In a bifurcated proceeding, the jury subsequently found appellant guilty of being a persistent felony offender in the first degree, and it enlarged the earlier penalty to 50 years' imprisonment.

The testimony at trial established, and the jury was entitled to believe, the following facts:

Johnson entered the Blue Grass Shade Company between 10:00 and 10:30 a. m. on August 7, 1979, and proceeded through a showroom to a rear work area. No one was present in either of these areas. Ms. Jane Molina, President and part owner of the company, was in her office in another part of the building. The remaining employees were in the factory. Ms. Molina was talking on the phone when she heard the doorbell activated by Johnson's entry. Johnson discovered the cash box in a drawer in the workroom and took it and its contents, which amounted to approximately $150. As he withdrew the cash box from the drawer, he was approached from the rear by Ms. Molina, who asked him what he wanted. He turned toward her, and she grabbed the box from his hands and ordered him to get in the corner while she called police. Johnson ran for the door, and as he approached the door leading from the work area to the front showroom, Ms. Molina threw herself against him and was knocked off balance. She recovered her posture and repeated her efforts at restraining Johnson. Thereupon, Johnson grabbed her arm and shoved her aside. He then started toward the front entrance door. When he reached the front door, with Ms. Molina in pursuit, he turned around and brandished a screwdriver at Ms.

Molina's stomach and said, "Give me the money." Ms. Molina refused, and Johnson ran from the building without the money and without inflicting a wound on Ms. Molina. She gave chase shouting, "I have been robbed," and continued the pursuit until she saw another person join in the chase. She then returned to the store and called the police.

The bystander, 14–year–old Scott Abel, pursued Johnson for a short distance before losing him in a nearby McDonald's restaurant. Abel flagged down a Lexington police cruiser and informed Officer Kevin Sutton what had occurred. He and Officer Sutton returned to McDonald's, but the appellant had fled. They then proceeded to the shade company where Officer Sutton made an on-–the–scene investigation. A description of Johnson and details of the crime were broadcast by the city police dispatcher. Shortly thereafter, Johnson was observed by two other officers approximately three blocks from the scene of the crime. He was confronted, arrested, and a screwdriver was found on his person. He was then returned to the shade company where both Molina and Abel made a positive identification of him as being the one who had attempted to rob the shade company and the one to whom they had given chase.

At the conclusion of the Commonwealth's case, appellant's counsel requested, and was granted, an in–chambers conference. Present were the trial judge, the prosecuting attorney, the defense attorney, and a law clerk. Appellant's counsel first moved the court for a directed verdict of acquittal, which was denied. He then advised the court that appellant proposed to take the stand and detail the attempted robbery, saying that he had gone into the shade company seeking employment, and that after finding no one present and seeing the money box readily available, he decided on the spur of the moment to steal it and its contents. Appellant would further state that he never demanded the money after

flourishing the screwdriver and that the only purpose for having it at all was to make good his escape since he had already changed his mind and had decided not to complete the robbery. In addition, counsel for appellant advised the court that in view of that testimony he proposed to seek an attempted theft instruction and a menacing instruction. The court responded as follows:

"THE COURT: I think this. I think this, that you're naturally entitled to your theory of the case depending on what the man says. If he says that, I would have to seriously entertain that type of instruction, although I just–you know, I'm nearly vehemently opposed to it, because I think the guy went in there to steal that thing and he didn't get by with it. But, you know, if he says something during the course of a trial, you're entitled to instructions on it, if that's your theory. If that is the theory, then you can argue it. I don't think that jury will be that stupid, but it's his case and it's your case; you're entitled to it.

\* \* \* \* \* \*

THE COURT: I haven't heard what Ken will say, but if the man presents that type of theory of the case, a theft, or a menacing, I'd have to consider maybe giving one. It's that simple, you know. I don't think it's worth a damn, but I mean I think it enough, if he says it, to give you an instruction on it."

Upon returning to the courtroom, appellant testified to the facts as his counsel had portrayed them to the court. At the conclusion of all of the testimony, appellant's counsel tendered an instruction on attempted theft and on menacing, which the court refused to give. In place thereof, it instructed the jury on first–degree robbery and second–degree robbery. Appellant objected to the instructions and detailed the nature of his objections. The instructions informed the jury that if it found the appellant guilty of first–degree robbery, it could fix his penalty at confinement in the peni-

tentiary for no less than ten years nor no more than 20 years, in its discretion. On the second-degree robbery instruction the court advised the jury that if it found the appellant guilty on this offense, it could fix his punishment at confinement in the penitentiary for no less than five years nor no more than ten years, in its discretion. An instruction on attempted theft carries with it a penalty of confinement in jail for 12 months or a fine not to exceed $500, or both confinement and a fine, in the jury's discretion. An instruction on menacing carries with it a punishment of confinement in the county jail for a period not to exceed 90 days or a fine not to exceed $250, or both confinement and a fine, in the jury's discretion. It is as clear as crystal why counsel for the appellant sought the instructions on attempted theft or menacing. The penalty is so much less than for the other offenses.

It appears to this court that the appellant was led down a primrose path into virtually confessing his guilt when the court indicated and gave appellant sufficient reason to believe that he would give said instructions on menacing and attempted theft, even though he did not definitely commit himself to do so. For a determination of the present issue, it makes no difference whether the appellant was guilty of attempted theft, menacing, first–degree robbery or second–degree robbery. The testimony of appellant was such that he could rely upon the court's assurance in chambers that under such a situation it would give the lesser instructions, which it did not do. It seems unusual that the prosecuting attorney would stand by without saying a word and permit the trial court to involve itself in such an untenable position. We need not determine whether the instructions offered by appellant were proper under the circumstances. We are of the opinion that the court did not carry out its agreement with appellant, which substantially prejudiced his right to a fair trial. Although counsel for appellant has not raised this issue on appeal, the failure of the trial judge to honor this agreement relative to instruc-

tions on menacing and attempted theft can be reached by RCr 9.26.

The Commonwealth's Attorney is an officer of the court and, as such, is under a continuing duty to advise the court as to the law affecting the prosecution of cases. Here, he stood by mute. As we have noted earlier, no one spoke for the judge; he spoke for himself. And he, like the Commonwealth's Attorney, is under a strict obligation to see that every defendant receives a fair trial. In *Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976), we said:

> "One of the finest offices the public can give to a member of the legal profession in this state is that of Commonwealth's Attorney. Its very status becomes a mantle of power and respect to the wearer. Though few are apt to wear it lightly, some forget, or apparently never learn, to wear it humbly. No one except for the judge himself is under a stricter obligation to see that every defendant receives a fair trial, a trial in accordance with the law, which means the law as laid down by the duly constituted authorities, and not as the prosecuting attorney may think it ought to be."

In the final analysis, the fact remains that the trial court and defense counsel had an understanding which the court later disavowed. It cannot be said that absent this agreement appellant's counsel would have proceeded with his case as he did. In *Workmen v. Commonwealth*, Ky., 580 S.W.2d 206 (1979), we said:

> " * * * If the government breaks its word, it breeds contempt for integrity and good faith. It destroys the confidence of citizens in the operation of their government and invites them to disregard their obligations. That way lies anarchy. We deal here with a 'pledge of public faith–a promise made by state officials–and one that should not be lightly disregarded.' * * * "

We are faced with a hard choice here, as we were in *Workmen*. It has been said that a criminal conviction should be reversed rather than to permit the government to play an ignoble part.

In view of the facts as taken from the record, we are of the opinion that this conviction should be reversed. Appellant's trial testimony pertaining to the commission of the principal offense shall be suppressed and shall not be used on the retrial for any purpose.

Having thus disposed of this case, we find it unnecessary to reach the remaining issues.

The judgment is reversed, and this case is remanded to the Fayette Circuit Court for a new trial consistent with this opinion.

All concur except STEPHENS, J., who did not sit.