**Randy Winton HAIGHT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 86–SC–971–MR.**

Supreme Court of Kentucky.

Sept. 8, 1988.

Edward C. Monahan, Asst. Public Advocate, Frankfort, Erwin W. Lewis, Asst. Public Advocate, Richmond, Ken Taylor, Nicholasville, for appellant.

Fredric J. Cowan, Atty. Gen., Mary James Young, Asst. Atty. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

Upon his plea of guilty to two counts of murder and two counts of robbery, the trial court sentenced appellant to death. Claiming numerous errors and violation of his constitutional rights, appellant appeals to this Court as a matter of right.

On September 3, 1985, appellant was indicted for the robberies and murders of Pat Vance and David Omer. After arraignment and entry of a plea of not guilty, the Commonwealth gave notice of its intention to seek the death penalty.

During the following weeks and while pretrial discovery and investigation was ongoing, counsel for the Commonwealth and counsel for appellant commenced negotiations toward a plea agreement. As a result of these negotiations, in January, 1986, the Commonwealth made an offer to appellant whereby, in return for his guilty plea to two counts of murder and two counts of robbery in the first degree, it would recommend a sentence of life imprisonment without possibility of parole for a period of twenty-five years. After consultation with appellant, defense counsel informed the Commonwealth's Attorney that the offer would be accepted. A short time later, in February, 1986, counsel for the parties met with the trial court and informed him of the terms of the agreement and of the considerations which influenced the agreement. At this meeting, the court expressed no disagreement, but made no commitment as to the imposition of sentence.

Between February and April, 1986, several discussions, some of which were *ex parte*, took place between counsel and the court. These discussions and the comments made by the trial court can, at best, be described as confusing and ambiguous. On some occasions the court strongly indicated that he would follow the Commonwealth's recommendation and on other occasions reiterated that he would not be bound by any agreement. On some occasions he indicated that he would permit withdrawal of the guilty plea in the event the recommendation was not followed and on other occasions tended to say otherwise. Throughout these discussions, counsel for appellant steadfastly maintained that in the absence of a commitment from the court to follow the agreement or permit withdrawal, there would be no guilty plea.

Toward the end of March, 1986, in separate conversations with the Commonwealth's Attorney and the Assistant Commonwealth's Attorney, the trial court strongly indicated an inclination to sentence in accordance with the agreement. He told the Commonwealth's Attorney, "You know I almost always take your recommendation." This statement was understood by the Commonwealth's Attorney, who informed appellant's counsel of such, that sentence would be imposed in accordance with the plea agreement.

On April 8, 1986, two days before the scheduled guilty plea hearing, counsel for appellant took a partially executed pretrial plea agreement to the judge. He was asked if it was still his policy to follow the

recommendation of the Commonwealth's Attorney unless something unusual appeared in the pre-sentence investigation report. This question was answered affirmatively and the court further said, "I have been a defense attorney. I know what situation you are in and if something ever had to happen, I would protect the defense attorney." Appellant's counsel took this to be an informal commitment to sentence in accordance with the agreement or permit withdrawal of the plea.

Prior to the guilty plea hearing, counsel explained to appellant what would likely transpire. Appellant was assured that an agreement had been reached whereby he would be sentenced in accordance with the recommendation of the Commonwealth, but a meaningless ritual was required in which he would have to say that no promise had been made to him in return for his guilty plea. Based on the foregoing, appellant signed an instrument denominated "Waiver of Further Proceedings and Petition to Enter Guilty Plea."

The waiver/petition instrument is a standard form which is designed to make a written record of the identity of the defendant, that he has been informed of his constitutional rights, his representation by counsel, his understanding of the proceedings, and the voluntariness of the guilty plea. The form contains clear, unequivocal language and is not designed for amendment or modification. Despite this, the form which appellant signed contained numerous handwritten additions (appearing hereinafter in brackets) which in many respects defeat the very purpose the form is designed to accomplish. For instance paragraph 10 says:

I understand that if I plead guilty I waive/give up [some of] my constitutional rights and will permit the court without jury to impose sentence within the same punishment range a jury could impose sentence. [However, this plea is being entered as a result of plea negotiations, and it is my understanding that it is the general policy of the court to ac-

cept the recommendation of the Commonwealth.]

And paragraph 12 says:

I understand that if I elect to plead guilty I will be giving up my appeal rights [as to guilt or innocence] and the court's imposition of sentence will conclude the matter [of guilt or innocence].

Finally, the additions to paragraph 13 virtually contradict the printed portion as follows:

I understand that the Commonwealth attorney and my attorney have indicated that a recommendation would be made to the court on my behalf. I realize that this will only be a recommendation and that the court is not bound or required to accept it[*], said recommendation being [ (see pretrial agreement) * But it is my understanding that it is the announced general policy of this court to accept the recommendation of the Commonwealth; otherwise I would not be pleading guilty.]

In the context of the foregoing negotiations, statements by the court and counsel, and documents, on April 10, 1986, the court undertook to hold a hearing to determine whether a guilty plea would be entered. At the outset, the Court noted that the waiver/petition instrument and the pre-trial agreement had been reviewed, inquired of appellant as to his identity and certain factual matters, and then asked the Commonwealth if it had a recommendation. In response the Commonwealth's Attorney said:

[T]he Commonwealth has recommended that the sentence be imposed of life without parole for 25 years on each of the two counts of murder, Counts 1 and 2. And for 20 years each on Counts 3 and 4 of the indictment (the robbery charges) and all counts to run concurrently.

A discussion then ensued concerning paragraph 13 (quoted, *infra*) of the waiver/petition instrument. Repeatedly, counsel insisted that in pleading guilty, appellant was relying on the court's announced general policy to follow the recommendation of the Commonwealth. The court acknowledged that he generally followed

such recommendation except in unusual circumstances and unusual cases and characterized this case as such. The trial court reiterated that no commitment was being made to follow the recommendation of the Commonwealth. Upon receiving this information, appellant's counsel requested and was granted a recess to confer with their client. When the proceeding resumed, appellant's counsel stated that it was his understanding that in the absence of unforeseen and unusual circumstances, the court would abide by its normal policy of accepting the Commonwealth's recommendation. The discussion continued and finally the court said:

As a general policy because of the number of cases that you have to deal with, I follow the Commonwealth's recommendation because Mr. Veal is a confident prosecutor and his staff and they prepare these cases and they know what they feel the evidence can stand to the extent of going to a jury.

And further:

All I am saying is that that is a possibility, and the policy of the Court is to generally go along at sentencing with the Commonwealth Attorney.... The Commonwealth has recommended and I have noted it of the record so that I don't forget it.

It is in the record *and barring any unforseen* as Mr. Taylor's statement, that is the following of the Court. But you also know that there is the possibility because I don't know what the sentencing report is going to show. That is all that I am saying.

....

And if you are advising your client based on the information that he gave you on what the Court's policy is, then you have advised him properly. *But there is a possibility that when I have access to the sentencing material that there are some things that maybe you don't even know about.* I don't know, and I just can't by law lock myself out on a possibility of punishment at a separate sentencing hearing.

....

Let the record reflect then, Mr. Haight, so there is no confusion later that the Court will note the Commonwealth's recommendation, but I cannot consider it as a promise. I am noting it as a recommendation of the Commonwealth to which this Court is a general rule or policy relies on the credibility of the Commonwealth attorneys as I do when I am Special Judge anywhere else on being able to evaluate the evidence and what they feel that they can prove *and then I as a general follow that recommendation barring any unforseen circumstances. What I mean by that is, that if at the sentencing hearing Mr. Bill Rogers [probation and parole officer] finds things that your lawyers don't even know about, that could have a bearing on the Commonwealth's recommendation.* That is all that I am saying. I am saying no more, and if you want to proceed I will go ahead. (Emphasis added.)

Based on the foregoing, appellant's counsel informed the Court that appellant would proceed and his guilty plea was accepted. At the conclusion of the hearing, the case was continued for sentencing.

It is unnecessary to detail all of the procedural events which transpired subsequent to entry of appellant's guilty plea. It is sufficient to note that upon learning of the trial court's determination that death was an appropriate sentence, appellant moved the court for leave to withdraw his guilty plea and this motion was overruled. By final judgment entered on September 15, 1986, the trial court ordered that appellant be executed.

■ In his voluminous brief, appellant has alleged that the trial court committed reversible error in numerous respects. In view of our disposition of this case, however, it is unnecessary to address all of the errors alleged. We have determined that appellant's guilty plea was defective and the trial court erred in overruling his motion to withdraw it.

A plea of guilty constitutes a waiver of several fundamental constitutional rights. In view of the importance of the rights

being abandoned, to be valid the plea must be knowing, intelligent and voluntary. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). RCr 8.08 expressly prohibits acceptance of a guilty plea without a prior determination that it is voluntary.

An examination of Kentucky case law reveals no reluctance to confront the issue when the validity of a guilty plea is challenged and, in a proper case, vacate the judgment. We have previously held that a guilty plea by a defendant who appeared to be "confused about his need for an attorney, the seriousness of the charges, the possible penalties involved, . . ." was invalid. *Maxwell v. Commonwealth,* Ky., 602 S.W.2d 169 (1980). We have also held that a guilty plea entered upon the mistaken belief that a murder charge would be reduced to manslaughter "was not 'voluntary' in a constitutional sense." *Allen v. Walter,* Ky., 534 S.W.2d 453 (1966). In a very significant case, *Couch v. Commonwealth,* Ky., 528 S.W.2d 712 (1975), this Court settled the question of whether failure of the trial court to follow the recommendation of the Commonwealth's Attorney rendered the guilty plea involuntary. We held that it did not, but gave notice that if the defendant was misled by the action of the trial court, refusal to allow withdrawal of his guilty plea would amount to an abuse of discretion.

The record of these proceedings as quoted herein amply demonstrates that appellant was misled at the time he entered his guilty plea. On several occasions, the trial court indicated an inclination to give considerable weight to the recommendation of the Commonwealth's Attorney. Further, and perhaps inadvertently, the trial court imposed a severe limitation upon the circumstances which would cause him to exceed the recommended sentence. That limitation was stated as "barring any unforeseen circumstances" and the circumstances were described as the discovery of material facts about appellant which were unknown to counsel for the Commonwealth. From the trial court's remarks, it was not unreasonable for appellant to conclude that he would be sentenced in accordance with the recommendation unless it was determined that the Commonwealth had been deceived or some new matter of an extraordinary nature was revealed. The record is without any indication that any such unforeseen circumstance occurred.

Appellant contends that the remarks of the trial court are so forthright as to constitute an irrevocable commitment to sentence in accordance with the recommendation bringing this case within the purview of *Johnson v. Commonwealth,* Ky., 609 S.W.2d 360 (1980) and *Workman v. Commonwealth,* Ky., 580 S.W.2d 206 (1979). Accordingly, he demands enforcement of the plea agreement.

While we have no difficulty concluding that appellant was misled by the ambiguous and confusing remarks of the trial court, the record does not demonstrate the existence of an outright commitment to impose a particular sentence. Just as we will not deprive appellant of · his rights based upon misleading remarks, we will not bind the hands of the trial court and require enforcement of the agreement unless an unmistakable commitment is made.

■ On the other hand, as to appellant's contention that the trial court made a commitment to permit withdrawal of the guilty plea in the event sentence was not imposed in accordance with the agreement, we agree. The trial court's comment to defense counsel that he had been a defense attorney and understood the situation and would protect defense counsel was reasonably subject to the interpretation that withdrawal of the plea would be allowed. While the facts in this case are not so egregious as those in *Fair v. Zant,* 715 F.2d 1519 (11th Cir.1983), *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), or *Johnson v. Commonwealth, supra,* appellant's counsel was assured that he would be protected. In the context of the negotiation, such assurance could only have been understood to mean that the death penalty would not be im-

posed or that a motion to withdraw the plea would be granted.

At the time the waiver/petition instrument was presented, the trial court and the parties were surely aware of this Court's decision in *Couch v. Commonwealth, supra,* wherein we held that upon a plea of guilty, the trial court was not bound to sentence in accordance with the agreement nor was it bound to allow withdrawal of the plea. Under *Couch,* the trial court cannot be bound by agreements or conditions the parties may wish to impose. Nevertheless, these parties presented and the trial court accepted an instrument which expressly conditioned entry of the guilty plea upon the "understanding" that the court would sentence in accordance with the agreement. Under no circumstances should such an instrument have been accepted as it violates the clear policy of this Court with respect to the exercise of judicial discretion in sentencing.

In final analysis, we recognize that appellant's counsel and counsel for the Commonwealth pressured the trial court for a commitment. Rather than firmly resist the pressure and retain all lawful discretion, or make the commitment sought, the trial court undertook to follow a middle course. It appears he desired to accommodate the parties' wishes, but fully retain his judicial prerogative. Such came into conflict and ultimately confusion and misunderstanding resulted. Whenever a trial court becomes deeply involved in the process of plea negotiations, he risks misleading the parties and losing his right to impose sentence contrary to the agreement.

For the foregoing reasons, the final judgment of the trial court and the trial court's order of May 8, 1986, accepting appellant's guilty plea are vacated. All charges in the indictment as originally returned by the Grand Jury are reinstated and this cause is remanded to the trial court for a plea to the crimes charged.

All concur.