Terry NICHOLS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 90–SC–838–DG.

Supreme Court of Kentucky.

Sept. 24, 1992.

Michael M. Losavio, Napier & Napier P.S.C., Paul J. Neel, Jr., Appellate Public Advocates, Louisville, for appellant.

Chris Gorman, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment and sentence of the circuit court which sentenced Nichols to a total of ten years as a result of his guilty plea to eleven counts of burglary.

The principal issue is whether it was reversible error for the trial judge to refuse to recuse himself from the sentencing hearing. Other issues raised are whether there was a procedural defect in the judgment of sentence; whether it was reversible error for the trial judge not to impose concurrent sentences; whether evidence derived from the failed plea bargain should have been excluded and whether the sentence was an abuse of discretion by the trial judge.

Nichols, while in jail in Ohio, volunteered information regarding a series of unsolved burglaries in Boyd and Greenup Counties, Kentucky. Nichols reached a plea agreement with the prosecution in all cases and the prosecutor recommended a sentence of five years on each of the eleven counts to run concurrently. Nichols appeared in Greenup Circuit Court on January 25, 1989, and pled guilty to eleven counts of burglary in the second degree in violation of K.R.S. 511.030. He waived formal sentencing and requested to be sentenced immedi-

ately. The trial judge indicated that he was inclined to follow the recommendation of the prosecution.

However, before rendering sentence, the judge inquired of the prosecutor if the victims of the burglaries had been consulted in regard to the recommendation, and the prosecutor responded that he did not know. Upon learning that at least one of the victims had not been informed of the proceedings, the trial judge withdrew sentence and set the matter for trial. He advised the prosecution to contact the victims. Three of the eleven victims did not agree with the prosecutor's recommendation. The Greenup County Jailer was one of the victims dissatisfied. These three cases were then sent to a jury only for the purpose of recommending sentence and not for any fact finding of guilt. The jury recommended five year concurrent sentences on the three offenses and indicated that the sentences were to run concurrently with the other eight charges. At final sentencing on May 24, 1989, the trial judge ordered that the three counts run concurrently with each other but further ordered that those terms be served consecutively to the others for a total of ten years in prison. Nichols appealed the ten year sentence, but the Court of Appeals affirmed. This appeal followed.

Nichols argues that the trial judge should have recused himself because the sentence was motivated by the desire to please the local jailer. He maintains that there was clear bias on the part of the sentencing judge. He claimed that when the judge learned that one of the victims was the jailer, he allowed this person to object to the sentence. When the trial judge did render sentence, the final sentence was double the initial prosecution's recommendation and contrary to the recommendation of the jury.

Nichols asserts that K.R.S. 26A.015(2)(a), (e) and SCR 4.300, Canon 3 C, provide that a judge is to disqualify himself in any proceeding where he has a personal bias or prejudice concerning a party and that a judge should disqualify himself in any pro-

ceeding in which his impartiality might reasonably be questioned.

The record indicates that the trial judge directed the prosecution to contact all the victims of the burglaries and not just the jailer. Our examination of the record agrees with the view of the Court of Appeals. The expression of the concern by the trial judge that the victims of the crimes be informed of the prosecution recommendation does not provide a basis for reversible error based on bias, prejudice or personal knowledge as contemplated by an automatic or statutory recusal in K.R.S. 26A.015(2)(a). Nichols could have sought disqualification of the sentencing judge pursuant to K.R.S. 26A.020(1) but did not. This statute provides a separate and distinct opportunity to a party who does not believe he or she will receive a fair and impartial trial. It allows a complaining party to file an affidavit with the circuit clerk who certifies the facts to the Chief Justice who then reviews the facts and determines whether to designate a special judge. When a party or counsel seeks to disqualify or recuse a judge from proceeding further in any matter, a motion can be filed with the judge under K.R.S. 26A.015 or an affidavit pursuant to K.R.S. 26A.020. It would also appear that an aggrieved party can do either or both.

Clearly the record does indicate that the trial judge was concerned about the views of the victims, including the County Jailer. The trial judge said, "Well, I certainly don't want Mr. Salmons to be mad at the judge. If he, the jailer, thinks he ought to have more ... I'm not going to give him more. I'm going to give him a fair trial."

K.R.S. 421.500 provides that victims of crimes have a right to make an impact statement for consideration by the court at the time of the defendant's sentencing. The county jailer, who is a victim of crime, has as much right as anyone to make such an impact statement regardless of his official position. The language of the trial judge does not provide a basis for personal bias. The comments of the trial judge were a proper expression of the requirement for notification to all crime victims of their right to express an opinion on a sentencing proceeding. The statement, "I don't want him mad at me," should not be unduly expanded in such a context.

The mere fact that the jury recommended this sentence on three offenses which it heard and expressed a desire that all the sentences should be run concurrently is not controlling. A jury recommendation regarding whether sentences shall be served concurrently or consecutively pursuant to K.R.S. 532.055(2) is not mandatory or binding on a trial judge. *Dotson v. Commonwealth,* Ky., 740 S.W.2d 930 (1987).

The contention that the proceedings on January 25, 1989 amounted to a formal sentencing is without merit. There was no final order entered as a result of that hearing. The judgment on a plea and sentencing by a jury and final sentencing order was signed June 15, 1989 and entered June 20, 1989. It was from this document that the notice of appeal was filed on June 21.

His third argument is that the trial judge was required to impose the concurrent sentence recommended by the jury. Nichols claims that he relied to his detriment on assurances of the trial judge that it would impose whatever the jury recommended. A careful examination of the record does not indicate that any such promise was ever made by the trial judge. Under any circumstances, the trial judge was not required to follow the jury's recommendation regarding sentences. *Cf. Dotson, supra.*

The authorities presented by Nichols are unconvincing. *Johnson v. Commonwealth,* Ky., 609 S.W.2d 360 (1980), and *Commonwealth v. Reyes,* Ky., 764 S.W.2d 62 (1969) are factually distinguishable. A review of the record does not indicate that the trial judge misled the defendant in any way, and that the trial judge was not a party to the plea agreement because the prosecution arranged the bargain in this case.

A fair and careful reading of the comments by the trial judge in this case does not indicate that he committed himself to be bound in any way by the recommenda-

tion of the jury. There is no possibility that this case could be interpreted that the judge made a promise that he would be required to fulfill similar to *Haight v. Commonwealth*, Ky., 760 S.W.2d 84 (1988).

Nichols next maintains that evidence should have been suppressed because the movant did not receive the sentence he bargained for. A careful review of the entire record shows that Nichols assumed the risk of his own multi-sentence imprisonment. The prosecution never wavered in its recommendation to the trial judge which was all that Nichols could possibly negotiate. The prosecution could not bind the trial judge in any way. There is no merit to this argument.

The final issue raised by Nichols is that the sentence was an improper unconstitutional abuse of discretion by the trial judge. This argument also has no merit. The trial judge has discretion to determine whether multiple sentences are to run concurrently or consecutively. K.R.S. 532.-110(1). The basis for the argument by Nichols is that the sentencing statutes for felonies made no provision for the consideration of a statement by the victim. However, K.R.S. 421.500 and 421.520 authorize such a victim impact statement.

The Commonwealth throughout its appellate brief argues that counsel for Nichols has failed to observe CR 76.-12(4)(c)(iv) in regard to the required statement about preservation of error. We must admonish appellate counsel to comply with all the rules of this Court regarding the presentation of appellate briefs and in particular with the requirements of the rule to state whether the question has been properly preserved for appellate review. However it should be noted that in regard to the argument regarding recusal, it is not required to preserve the error as noted in *Commonwealth v. Carter*, Ky., 701 S.W.2d

409 (1985). *Also see Small v. Commonwealth*, Ky.App., 617 S.W.2d 61 (1981) in this regard.

It is the holding of this Court that the circuit judge was not required to *sua sponte* recuse himself pursuant to K.R.S. 26A.015. There was no reversible error in the imposition of sentence in this case.

The decision of the Court of Appeals is affirmed.

LAMBERT, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

COMBS, J., dissents by separate opinion in which STEPHENS, C.J., and LEIBSON, J., join.

COMBS, Justice, dissenting.

Respectfully, I dissent.

### I.

The trial judge ought to have surrendered the case pursuant to the timely motion of recusation.[1] The Commonwealth recommended a 5–year effective sentence; the trial judge was initially disposed to accept the recommendation; but, to accommodate Jailer Salmons, the court resolved to impose a harsher penalty; the jury fixed the sentence for the Salmons burglary at 5 years; bound by the verdict as to the term, the court nevertheless sentenced Nichols to 10 years by ordering consecutive service. *That* is what appears from this proceeding, making it one not distinguished for an appearance of integrity.

The Code of Judicial Conduct provides that "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned," including but not limited to instances where he has a personal bias or prejudice concerning a party, or a known interest which could be substantially affected by the outcome. SCR 4.300 Canon 3 C(1)(a) and (d)(iii). *Cf.*

---

1. For what it's worth, and contrary to the majority's implication, the issue is whether the trial court erred in denying a defense motion recusing, not whether the judge should have acted *sua sponte*. (*Ante* at 266.) The defense motion alleged that "[a]t least two complaining witnesses in the case work directly with the Honorable Trial Judge in the day to day function of the Greenup County Circuit Court." It is wholly fair to conclude that the judge knew that one of the witnesses referred to was Jailer Salmons. Although no order was entered, the court calendar reflects that the motion was "overruled" two days after filing.

KRS 26A.015(2). I suggest that the judge here as much as confessed partiality, interest, and bias when he stated on the record that his sentencing decision would be influenced by whether the result would make Mr. Salmons "mad at the Judge."[2]

The majority would have it that the judge's concern for Mr. Salmons was no more than that due any burglary victim pursuant to KRS 421.500, dealing with victim-impact information as a factor in sentencing. I do not fault a trial court for its concern for a victim, as a victim. Here, however, it is evident that the trial court's solicitude toward Jailer Salmons was due not to the impact of the crime upon the victim, but due to the personal relationship between the victim and the court: "Well, I certainly don't want Mr. Salmons mad at the Judge." While there are a number of salutary reasons for considering *genuine* victim-impact information, not counted among them, because not relevant to tailoring the penalty to the crime, is the preservation of an individual's personal esteem for the judge.

Moreover, no *genuine* victim-impact information is to be found in this record. KRS 421.500(3)(c) requires law enforcement personnel to inform the victim as to the "criminal justice process as it involves the participation of the victim"; and subsection (5)(b) requires the prosecutor, "[i]f the victims so desire," to notify a victim of his/her "right to make an impact statement for consideration by the court at the time of sentencing." This right to make an impact statement is more fully discussed in KRS 421.520, which, being more specific (and headed "Victim Impact Statement"), must control where it is inconsistent with Section .500. Section .520 implies that "the victim has the right to submit a *written* victim impact statement" (emphasis added), which "may contain, but need not be limited to, a description of the nature and extent of any physical, psychological or finan-

cial harm suffered by the victim ... and the victim's recommendation for an appropriate sentence." The statute purports to compel the court to consider the statement prior to making its sentencing decision.

First, deaf to cries of nitpicking, I observe that the present record is devoid of written victim-impact statements. One may also, as I have, search in vain for even an oral statement by any victim. Where does the statute provide for, and why should we (or a trial court) countenance, the prosecutor's hearsay reports of victims' statements?

Second, what the prosecutor did report was that the three victims' objections "boil down to they do not believe in concurrent sentencing for someone who has committed so many offenses." Where in this is any "recommendation for an appropriate sentence"? Where is any information as to impact of a crime upon a victim? I venture that the statute intends that a victim may recommend a "sentence" (that is, a term of years—KRS 532.060) appropriate for the crime committed against him/her, but not consecutive sentencing for crimes committed against others. This view is neatly supported by the definition of "victim" found in KRS 421.500(1):

> "[V]ictim" means an *individual* who suffers direct or threatened physical, financial, or emotional *harm* as the result of the commission of *a* crime....

(Emphasis added.) *Cf.* KRS 421.520(2). A victim-impact statement is not a committee report. Perhaps the court would have had to consider victim A's (written!) opinion that Nichols should draw 999 years for burglarizing A's home; but the court's consideration of (indeed, deference to) A's opinion that Nichols should be sentenced more harshly (or consecutively) for other crimes, of which A was *not a victim*, went far beyond the intent of the statute.

---

**2.** It is also interesting to note that, whereas the defendant had requested an expeditious transfer out of Mr. Salmons' jail due to hard feelings, the order to transport the prisoner recited: "The defendant is being sent to the Boyd County Jail for holding because he is accused of the burgla-ry of the home of the Greenup County Jailer, and the Greenup County Jailer has stated that they do not desire to have the defendant lodged in the jail." The jailer's statement was not made on the record.

Furthermore, it went far beyond the bounds of due process. Concede that the impact upon an individual victim ought to be considered in fixing a sentence for a crime. Concede even that the impact upon each victim is relevant to determining whether multiple sentences should run concurrently or consecutively. But do not concede, I say, that the discretion to assess the effect of accumulated offenses rests elsewhere than in an impartial jury and/or an impartial judge; do not concede that it may be delegated, even in part, to a (justifiably) biased victim.

## II.

The trial court erred in refusing to suppress evidence of Nichols' incriminating statements and other evidence obtained as a result of those statements.

Indeed, true to its word, the Commonwealth recommended throughout that Nichols be sentenced to all-concurrent terms. But the Commonwealth's bad faith occurred long before the court proceedings. When the plea agreement was forged, Nichols was incarcerated in Ohio, not going anywhere soon. He was represented by an Ohio attorney (whose conversance with Kentucky law we may not presume). Apparently Nichols was informed by the Commonwealth's Attorney that the court would not be bound by a plea agreement. Likely he was *not* informed that the victims of his crimes could make victim-impact statements which might affect the court's receptivity to the bargain. Certainly he was *not* informed that the Commonwealth had breached its statutory duty to consult with the victims about disposing of the case by a negotiated plea. KRS 421.500(6).[3]

Had the Commonwealth obeyed the law, it would have been in a position to know that *its* recommendation might not carry its usual weight in this case, and would have been constrained by good faith to apprise Nichols of the victims' attitudes and rights. The Commonwealth may not now claim

"good faith in ignorance" when the ignorance would have been dispelled by compliance with the law. I cannot agree that Nichols "assumed the risk" (*ante* at 266) that the law enforcement authorities would violate the law and negotiate a plea arrangement without consulting with the victims. To the contrary, Nichols was entitled to assume that such consultation had taken place and, from the Commonwealth's silence, that the victims had voiced no objections to the agreement. As it happened, Nichols got much less than he had bargained for, much less than he had a right to expect.

STEPHENS, C.J., and LEIBSON, J., join in this dissent.

---

**3.** KRS 421.540 provides that "The failure to provide a right, notice or privilege to a victim ... under KRS 421.510 to 421.550 ... shall not be grounds for the defendant to seek to have the conviction or sentence set aside." One, this section by its terms does not apply to KRS 421.500. Two, the statute does not purport to prohibit suppression of evidence, prior to a conviction or sentence.