# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: MARCH 14, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0482-MR

ROBERT K. COLLINS                                                   APPELLANT


V.                      ON APPEAL FROM MENIFEE CIRCUIT COURT
HONORABLE WILLIAM EVANS LANE, JUDGE
NO. 17-CR-00015-002


COMMONWEALTH OF KENTUCKY                            APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Robert Collins appeals to this Court and challenges the Menifee Circuit Court's decision to deny his motion to withdraw his guilty plea to charges of murder; first-degree rape, victim under 12; and first-degree sodomy, victim under 12. For the reasons expressed herein, we decline to reverse, and we affirm the circuit court.

## I.     FACTS AND BACKGROUND

In July 2021, Collins, while being represented by private counsel, entered into a plea agreement with the Commonwealth in which he agreed to plead guilty to murder; first-degree rape, victim under 12; and first-degree sodomy, victim under 12. In return, the Commonwealth agreed to recommend a sentence of life imprisonment without the possibility of parole for 25 years for the capital murder charge, as well as 50-year sentences on each of the

remaining two charges. The practical effect of the agreement would be that Collins would escape sentencing recommendations of death or life without the possibility of parole. Collins formally entered his *Alford* plea on July 15, 2021. *North Carolina v. Alford,* 400 U.S. 25 (1970).

Prior to sentencing, Collins made a *pro se* motion to withdraw his guilty plea, as he claimed it had not been entered freely, knowingly, or voluntarily.[1] The trial court subsequently appointed an attorney from the Department of Public Advocacy to represent Collins. By and through his new counsel, Collins filed a motion to withdraw his guilty plea on the grounds that he was "ill and not fully informed by defense counsel as to the evidence against him, his possible defenses at trial, and the true nature of the sentence that the Commonwealth was recommending." Accordingly, the trial court held an evidentiary hearing on Collins's motion to withdraw his plea. At the hearing, Collins's former counsel, Clyde Simmons and Tom Balinski, each testified to the circumstances underlying Collins's guilty plea. Collins declined to testify on his own behalf.

Ultimately, the trial court denied Collins's motion to withdraw his guilty plea after making a finding that there was "uncontroverted evidence in this

---

[1] While the Menifee Circuit Court's order denying Collins's motion to withdraw his guilty plea references a prior *pro se* motion to withdraw that plea, that *pro se* motion does not appear in the record before this Court. At what was scheduled to be Collins's sentencing hearing on September 23, 2021, the trial court stated on the record that Collins had filed multiple pro se "writings" to relieve his current counsel and to withdraw his guilty plea. The trial court did not sentence Collins on that day.

case that the plea was **voluntary** without Defendant's testimony." (emphasis added). The trial court then sentenced Collins in accordance with his plea deal. Collins now appeals to this Court as a matter of right, KY. CONST. § 110(2)(b), and argues that the trial court erred in determining that he entered his guilty plea voluntarily. In the alternative, Collins argues that the trial court nonetheless abused its discretion in denying his motion to withdraw a voluntary plea. Finally, Collins urges this Court to provide guidance to trial courts regarding the proper exercise of their discretion to grant motions to withdraw voluntary guilty pleas.

We will develop further facts as necessary.

## II.    ANALYSIS

Kentucky Rule of Criminal Procedure (RCr) 8.10 provides that, "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." "A motion to withdraw a plea of guilty under RCr 8.10 is generally addressed to the sound discretion of the court; however, where it is alleged that the plea was entered **involuntarily** the defendant is entitled to a hearing on the motion." *Williams v. Commonwealth*, 229 S.W.3d 49, 51 (Ky. 2007) (emphasis added) (citing *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006)). Because a plea of guilty "constitutes a waiver of several fundamental constitutional rights" due process requires that a valid plea "must be knowing, intelligent and voluntary." *Haight v. Commonwealth*, 760 S.W.2d 84, 87-88 (Ky. 1988) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969); *Brady v. United States*, 397 U.S. 742 (1970)).

3

Accordingly, if a trial court faced with an RCr 8.10 motion to withdraw a guilty plea determines that the defendant's plea was entered involuntarily, "the motion to withdraw it must be granted." *Williams*, 229 S.W.3d at 51 (citing *Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky. App. 2004)). Such a requirement obviously undercuts the discretion entrusted to the trial court in ruling on an RCr 8.10 motion. In fact, "[o]ur case law is clear that the discretion to deny a motion to withdraw a guilty plea exists only after a determination has been made that the plea was voluntary." *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002).

"In determining whether a guilty plea is voluntary . . . the trial court considers the totality of the circumstances surrounding the guilty plea[.]" *Porter v. Commonwealth*, 394 S.W.3d 382, 385 (Ky. 2011). "The trial court is in the best position to determine if there was any 'reluctance, misunderstanding, involuntariness, or incompetence to plead guilty[.]'" *Id.* at 386 (quoting *Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky. 2001)). Because the trial court's inquiry into the circumstances underlying the entrance of a guilty plea is a probe into the facts, this Court reviews the trial court's voluntariness determination for clear error. *Id.* at 386. A trial court's decision is not clearly erroneous when supported by substantial evidence. *Id.* Where a defendant alleges that a deficiency in the assistance of his counsel rendered his guilty plea invalid, the trial court must also "juxtapose the presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v.*

*Washington* inquiry into the performance of counsel[.]" *Bronk,* 58 S.W.3d at 486 (footnote omitted) (citing *Strickland v. Washington,* 466 U.S. 668 (1984)).

As previously stated, if the trial court determines that the defendant's guilty plea was entered **voluntarily**, the court retains its discretion to either grant or deny a motion to withdraw the plea. *Williams,* 229 S.W.3d at 51. "At its heart, a motion to withdraw a voluntarily entered guilty plea is an appeal to the discretion of the trial court." *Greene v. Commonwealth,* 475 S.W.3d 626, 630 (Ky. 2015). Accordingly, this Court reviews a trial court's decision to deny a motion to withdraw a guilty plea for an abuse of discretion. *Edmonds,* 189 S.W.3d at 570. A trial court abuses its discretion when its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Here, after holding an evidentiary hearing on the matter, the trial court found that Collins had entered his guilty plea voluntarily. This Court concludes that the trial court's voluntariness determination was supported by substantial evidence, and therefore not clearly erroneous. *Porter,* 394 S.W.3d at 386.

The record reveals that prior to the entrance of Collins's guilty plea, the trial court conducted a thorough plea colloquy to ascertain whether Collins was knowingly, intelligently, and voluntarily entering his plea. When prompted by the trial court, Collins testified that he had the ability to read and write; had never suffered from any mental impairments; was not currently impaired by illness, alcohol, or drugs; that he understood the nature and consequences of the charges against him, as well as the facts supporting those charges; that he

5

was, in fact, guilty[2] of those charges; that he had consulted with his attorneys before entering his guilty plea; that he had enough time to properly consult with his attorneys before entering his plea; that he had no complaints about the effectiveness of his attorneys in this case; that someone had read to him the contents of his motion to enter a guilty plea and he understood that motion; that he understood he had certain constitutional rights like the right to a trial by jury, right to counsel, right to confront witnesses against him, and that he had a privilege against self-incrimination; that he understood he was waiving those rights by pleading guilty; and that he was pleading guilty to his offenses willingly, freely and voluntarily.

In his later motion to withdraw his guilty plea, Collins argued to the trial court that he was "ill" on the day he entered his guilty plea. At the trial court's evidentiary hearing, Collins's former counsel, Clyde Simmons, testified that at some point preceding the entrance of his plea Collins did tell him he had contracted the COVID-19 virus, but that "Mr. Collins wasn't sick on the day of the plea." Simmons further testified that Collins never indicated to anyone the morning of the plea that he was sick. When asked whether Collins was sick on the morning of his plea, Collins's former counsel, Tom Balinski, testified that Collins "looked a little tired, that was all."

Collins also argued to the trial court that he was not fully apprised of the evidence that the Commonwealth was prepared to offer against him. Simmons

---

[2] As previously stated, Collins entered a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).

6

testified that due to the nature of Collins's charged offenses, a protective order prohibited him from sharing copies of every piece of evidence with Collins. Simmons testified, however, that he did tell Collins about the evidence he had obtained in discovery.

Collins further argued to the trial court that "he felt pressured by counsel to enter the plea, and did not do so voluntarily." Simmons testified that he and Collins had been discussing the possibility of entering a plea agreement for two years prior to Collins's eventual plea. Simmons testified that, "This plea had been talked about. This plea had been all but prayed for for months and months and months. Mr. Collins was aware of what it meant." Simmons testified that Collins was initially unwilling to enter a guilty plea in exchange for a sentence of life without the possibility of parole. Simmons testified that the Commonwealth subsequently offered Collins a recommended sentence of life without the possibility of parole for 25 years "two to three weeks" before Collins eventually entered his guilty plea. Simmons testified that after he received this most recent offer, Collins indicated that he was willing to accept such an offer. Simmons then testified that the Commonwealth arranged for Simmons to be transported to Bath County to formally enter his plea on July 15, 2021. Simmons testified that "a couple of days, or a day" before Collins was scheduled to enter his plea, Collins indicated that he had changed his mind and would not enter a plea. Simmons testified that he contacted Collins's grandmother and explained the situation to her. Simmons testified that, at that time, it was his impression "that we had this one shot in Bath County that

7

morning to enter the plea or it was all off the table" but he doubted that he had communicated that impression to Collins. Balinski testified that Collins's trial had already been scheduled for September of the same year, and that both attorneys were preparing for trial. Balinski testified that he could not say whether he had the impression that the Commonwealth's latest plea offer would expire soon. Simmons testified that, despite Collins's recent indication that he did not want to plead guilty, he had been transported to Bath County where both attorneys met with him the morning of July 15. Simmons and Balinski each testified that their meeting with Collins lasted less than an hour, and Simmons testified that Collins spent 15 minutes of that meeting on the phone speaking with his grandmother. Simmons testified that after Collins spoke to his grandmother, he indicated to his attorneys that he was ready to plead guilty in exchange for the Commonwealth's sentencing recommendation of life without the possibility of parole for 25 years. Balinski testified that he did not recall that Collins ever said he was unwilling to go forward with his plea the morning of July 15.

Collins also argues to this Court that he was not fully informed of the true nature of the sentence he would receive as a result of his plea. When asked at the evidentiary hearing whether he had informed Collins that he would be required to register as a sex offender as a consequence of his plea, Simmons testified that, "I think so. I can't swear to it, but I think so. That is part and parcel." Balinski testified that he did not recall whether the attorneys ever informed Collins of this consequence. Simmons also testified that the

8

attorneys made it clear to Collins that a sentence of life without the possibility of parole for 25 years did not mean he would automatically be paroled, only that he would be "eligible" to appear before the Parole Board. Balinski also testified to the same.

Again, Collins declined to testify on his own behalf at the trial court's evidentiary hearing, so the testimony of his former counsel was unrebutted.

After hearing the above testimony from Simmons and Balinski, the trial court determined that there was "uncontroverted evidence in this case that the plea was voluntary[.]" The trial court also analyzed Collins's claim under the ineffective assistance of counsel standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). "[T]o succeed in a standard claim of ineffectiveness of counsel, a defendant must show (1) deficient representation by counsel and (2) resulting prejudice to the defense." *Commonwealth v. Tigue*, 459 S.W.3d 372, 384 (Ky. 2015) (citing *Strickland*, 466 U.S. at 687). "This 'test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Id.* at 391 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). "[I]n order to satisfy the "prejudice" requirement [of the *Strickland* test], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Perhaps put more simply, the defendant "must allege facts that, if proven, would support a conclusion that the decision to reject the plea bargain and go to trial would have been rational[.]" *Commonwealth v. Thompson*, 548

9

S.W.3d 881, 894 (Ky. 2018) (quoting *Stiger v. Commonwealth*, 381 S.W.3d 230, 237 (Ky. 2012)).

This Court finds it unnecessary to parse each of Collins's broad, conclusory claims to determine whether he has properly alleged or proven deficient performance on the part of his counsel, because it is abundantly clear that Collins has failed to prove he suffered any real prejudice as a result. Prior to entering his guilty plea, Collins faced the possibility that, if his case proceeded to trial and he was proven to be guilty, the Commonwealth would recommend he receive the death penalty. At no point during the trial court's evidentiary hearing did Collins testify or assert that but for his counsel's alleged deficiencies he would have declined the Commonwealth's plea agreement and taken his chances at trial. Nor did defense counsel elicit any testimony from Simmons or Balinski that would have proven the same. Rather, Simmons testified that it was his opinion that, if this case proceeded to trial, a potential jury would have a hard time believing Collins's alternative perpetrator defense and that the evidence the Commonwealth was prepared to offer against Collins was likely to inflame a jury. Simmons also testified that the Commonwealth had a "massive amount of evidence" at its disposal to convict Collins. Simmons testified he conveyed these opinions to Collins. After hearing this testimony, the trial court ultimately concluded that there was a "substantial effort to reach a [sic] good a result as possible in light of the facts . . . . The death penalty was avoided . . . ." Given the magnitude of the charges and penalties Collins faced, the opinion of his counsel as to the likelihood of

10

his success at trial, the lack of any contradictory testimony from Collins, and the fact that his plea agreement reflected a recommended sentence of life without the possibility of parole for 25 years, this Court cannot say that Collins has offered any facts that would "support a conclusion that the decision to reject the plea bargain and go to trial [and face the potential of the death penalty] would have been rational[.]" *Id.*

Our review of the record, including the testimony discussed above, convinces this Court that the trial court did not commit clear error in making its voluntariness determination, as it was clearly supported by substantial evidence. *Porter*, 394 S.W.3d at 386.

Collins finally argues to this Court that despite the trial court's conclusions as to the voluntariness of his plea, the trial court nonetheless abused its discretion in denying his motion to withdraw his guilty plea. Collins argues that because RCr 8.10 entrusts trial courts with the discretion to grant or deny a motion to withdraw even a **voluntary** plea, the trial court's failure to further articulate another basis (aside from voluntariness) for the denial of his motion constitutes error. Collins further urges this Court to provide guidance to trial courts regarding the proper exercise of their discretion to grant or deny motions to withdraw voluntary guilty pleas. This Court has no problem concluding that the trial court did not abuse its discretion in this instance. We have previously declined to pronounce a standard restraining our trial courts' discretion in ruling on a motion to withdraw a guilty plea that was voluntarily entered, *Williams*, 229 S.W.3d at 53, and we decline to do so again today. We

11

see no reason why the trial court's determination, supported by substantial evidence, that the defendant's guilty plea was voluntary cannot be reason enough to deny a motion to withdraw that plea. Accordingly, we affirm the Menifee Circuit Court.

## III. CONCLUSION

This Court affirms the judgment of the Menifee Circuit Court because we conclude the trial court did not abuse its discretion in denying Collins's motion to withdraw his voluntarily entered guilty plea.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., concurs in result only.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Matthew Robert Krygiel
Assistant Attorney General