RENDERED: OCTOBER 25, 2012
TO BE PUBLISHED

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$



### 2008-SC-000864-DG

DATE 11-15-12 ЅиА Grau;++,Ɒc

DAVID STIGER                                                                                          APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2007-CA-000549-MR
JEFFERSON CIRCUIT COURT NOS. 03-CR-000060,
03-CR-000109, AND 03-CR-003264


COMMONWEALTH OF KENTUCKY                                                         APPELLEE


**OPINION OF THE COURT BY JUSTICE ABRAMSON**

**AFFIRMING**

In December 2003, David Stiger pled guilty in the Jefferson Circuit Court to, among other offenses, five counts of first-degree robbery. By Judgment entered January 30, 2004, the trial court sentenced him, pursuant to the plea agreement, to concurrent terms of ten years' imprisonment for each robbery count, enhanced to twenty years by virtue of Stiger's status as a first-degree persistent felon. First-degree robbery is a "violent offense," as that term is defined in Kentucky Revised Statute (KRS) 439.3401, the violent offender statute, and under that statute, a person convicted of a violent offense does not become eligible for parole until he has served the lesser of 85% of the sentence imposed or twenty years. Claiming that he was not apprised of the parole ramifications of his sentence and that in fact he was told by counsel that he would become eligible for parole upon having served 20% of his sentence, in

January 2007, Stiger moved for relief from his guilty plea pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42. The trial court summarily denied Stiger's motion, and a unanimous panel of the Court of Appeals affirmed. Relying on this Court's opinion in *Commonwealth v. Padilla,* 253 S.W.3d 482 (Ky. 2008), the Court of Appeals ruled that parole was a collateral consequence of a sentence and that a defendant's ignorance of or even misapprehension regarding a sentence's collateral consequences does not invalidate his guilty plea. Stiger moved for discretionary review, and during the pendency of his motion the United States Supreme Court issued its opinion in *Padilla v. Kentucky,* 559 U.S. ___, 130 S. Ct. 1473 (2010), overruling our *Padilla* opinion.[1] We then granted Stiger's discretionary review motion to consider his claims in light of the Supreme Court's decision. We now affirm.

## RELEVANT FACTS

According to police reports, during the afternoon of July 23, 2002, two young men entered Derby City Video on South 4th Street in Louisville and, after engaging the manager in conversation for a few minutes, pulled handguns and demanded the money from the cash register. The manager opened the register, whereupon one of the men climbed over the counter into the manager's office and took the money. From the inside of the office, the robber unlocked the office door and was leaving when a customer entered the store. The robbers

---

[1] His discretionary review motion was held in abeyance for over a year pending the U.S. Supreme Court decision in *Padilla.*

forced the man at gunpoint into the office, had him empty his pockets, took the cash he was carrying, and then fled.

On November 8, 2002, Henry White reported to the Louisville police that a man he had met about a week before came to the door of his home on Ormsby Avenue and asked to be let in. Inside, the man asked for something to drink, and when the two went to the kitchen, the man picked up a paring knife from the counter, held it to Mr. White's throat, and demanded his money. Mr. White resisted and, though sustaining cuts to his arms, eventually subdued the attacker. When the attacker agreed to leave, Mr. White let him go and called the police. About three weeks later an investigator showed Mr. White a photo pack, and he identified Stiger as his attacker.

On November 12, 2002, William Mootz reported to the Louisville police that a young man he knew as "Goldie" came to his home on Glenmary Avenue and asked to be let in. Once inside, the man hit him on the head with a large flashlight, then opened the door to let in a second man. The two men tied up Mr. Mootz with a sheet and proceeded to ransack his bedroom, eventually departing with jewelry, a cell phone, and Mr. Mootz's car. According to the criminal complaint, Mr. Mootz was also able to identify Stiger as the person who first came to his door.

On November 18, 2002, the Derby City Video was again robbed. A different clerk was working that afternoon, and he reported that a young man and a young woman entered the store together, that the woman asked him something, and that while he was talking to her the man came up behind him,

held a knife to his throat, and demanded money. The robbers took the store's cash and the clerk's wallet.

On November 25, 2002, Louisville police officers responded to a report of disorderly conduct at Juanita's Restaurant on South Brook Street. Stiger was exiting the restaurant when the officers arrived. He was wearing a security officer's badge on his belt, but when asked about it could not explain how he came by it. Restaurant customers and workers reported that Stiger had claimed to be a police officer investigating counterfeit money, and as part of his "investigation" demanded the restaurant's cash. He became angry when the restaurant workers refused his demand. One of the workers called the police, and Stiger left, or tried to leave, when the officers arrived.

Earlier that day, a security guard at Spalding University reported to a police officer that as she was walking along the university's 4th Street side a young man came up behind her, placed one hand over her mouth, and with the other held a knife to her throat. He demanded her rings, rifled her pockets, and then demanded her security badge. The guard later identified the badge found on Stiger as the one stolen from her. After his arrest at the restaurant, Stiger gave a statement to the investigators in which he admitted participating in both of the Derby City Video robberies.

Based on this evidence, the Jefferson County Grand Jury issued two indictments against Stiger. In one of them he was charged with first-degree burglary and first-degree robbery for his November 8 attack on Mr. White. In the other he was charged with four counts of first-degree robbery (the two video

4

store robberies, the robbery of Mr. Mootz, and the robbery of the security guard), one count of first-degree burglary (the burglary of Mr. Mootz's apartment), one count of unlawful imprisonment (the binding of Mr. Mootz), and one count of impersonating a peace officer (the restaurant incident). In a subsequent indictment, Stiger was alleged to be a first-degree persistent felony offender (PFO), with prior felony convictions for receiving stolen property and for escape.

The cases were eventually consolidated and set for trial in January 2004. First-degree robbery, KRS 515.020, and first-degree burglary, KRS 511.020, are both class B felonies punishable by imprisonment from ten to twenty years. The minimum sentence is increased to twenty years if the person convicted is found to be a persistent felon of either the first or second degree. KRS 532.080. The maximum sentence is increased to fifty years or life. *Id.* As noted above, first-degree robbery is also, for parole purposes, a violent offense, the perpetrator of which must serve 85% of his sentence, but not more than twenty years, before becoming eligible for parole. KRS 439.3401. First-degree unlawful imprisonment, KRS 509.020, and impersonating a peace officer, KRS 519.055, are both class D felonies punishable by imprisonment from one to five years, subject to PFO enhancement of from five to ten years. Prior to trial, the Commonwealth offered a plea bargain to Stiger whereby, in exchange for his guilty plea to all nine of the alleged offenses, it would recommend the minimum ten-year sentence for each of the seven class B felonies and five-year sentences for the two class D felonies, all to run concurrently for a total sentence of ten

years enhanced to twenty years by virtue of Stiger's PFO status. Stiger accepted this twenty-year offer, and on December 16, 2003, at a hearing pursuant to RCr 8.08 and *Boykin v. Alabama*, 395 U.S. 238 (1969), moved to enter a guilty plea. The trial court granted the motion, and by Judgment entered January 30, 2004, convicted and sentenced Stiger accordingly.

Three years later, in January 2007, Stiger moved for relief from that Judgment pursuant to RCr 11.42. His *pro se* motion asserted three grounds for relief. He claimed first that his plea was involuntary in violation of *Boykin* because "he was made to believe" that he was being offered a sentence without PFO enhancement, and because at the plea colloquy "there was no mention" of the fact that he would not be eligible for parole until he had served 85% of his sentence. He next contended that trial counsel was ineffective prior to the plea by incorrectly advising him that he would be eligible for parole after serving four years instead of the seventeen years required under the violent offender statute. He also contended, finally, that counsel rendered ineffective assistance at sentencing when counsel failed to respond "to the sudden and unexpected change in the sentence that was imposed by the court" with a motion to withdraw the plea. Finding no merit to these claims, the trial court denied Stiger's motion without appointing counsel and without holding a hearing. The Court of Appeals affirmed and, following the United States Supreme Court's *Padilla* decision, this Court granted discretionary review. Stiger now focuses primarily on counsel's alleged misadvice concerning parole eligibility and contends that, under *Strickland v. Washington*, 466 U.S. 668

6

(1984) and *Padilla v. Kentucky,* 130 S. Ct. at 1473, that misadvice so tainted his plea as to invalidate it. Before addressing that particular contention, we briefly address Stiger's other claims.

## ANALYSIS

As noted, Stiger seeks relief from his guilty plea pursuant to RCr 11.42 on the ground that his plea was invalid. To be entitled to relief on that ground, an RCr 11.42 movant must allege with particularity specific facts which, if true, would render the plea involuntary under the Fourteenth Amendment's Due Process Clause, would render the plea so tainted by counsel's ineffective assistance as to violate the Sixth Amendment, or would otherwise clearly render the plea invalid. *Fraser v. Commonwealth,* 59 S.W.3d 448 (Ky. 2001). Motions which fail adequately to specify grounds for relief may be summarily denied, as may be motions asserting claims refuted or otherwise resolved by the record. *Commonwealth v. Elza,* 284 S.W.3d 118 (Ky. 2009). Motions adequately alleging valid claims not refuted by the record entitle the movant to an evidentiary hearing. *Fraser,* 59 S.W.3d at 452. We review the trial court's factual findings only for clear error, but its application of legal standards and precedents we review *de novo. Brown v. Commonwealth,* 253 S.W.3d 490 (Ky. 2008).

## I. The Record Refutes Stiger's Claim That He Was Not Informed About His PFO- Enhanced Sentence.

To the extent that Stiger's claims are based on allegations that he was not aware that he was to be sentenced as a PFO or that PFO sentencing took

him by surprise, not only are those claims refuted by the record, as the trial court implicitly found, but they are refuted by Stiger's own motion. Stiger's plea agreement, which he signed and acknowledged in court, provides as part of the Commonwealth's recommendations that Stiger would receive a ten-year concurrent sentence for all of his offenses and that "that 10 year sentence would be enhanced to 20 years by the PFO I indictment." That is precisely the sentencing agreement that the trial court's Judgment reflects. Stiger himself, moreover, arguing in his RCr 11.42 motion that counsel misadvised him regarding parole, complains that his attorney "advised movant that if movant withdrew his not guilty [plea] and entered into a plea of guilty in accordance [with] the Commonwealth's recommendation, that he would then be required to serve a twenty (20) year sentence and that he would be eligible for a parole review after having served four (4) years on the twenty (20) year sentence." Regardless of whether counsel misadvised Stiger about parole eligibility, it is clear that no one misinformed Stiger about his PFO-enhanced twenty-year sentence.

## II. The Trial Court Was Not Obliged to Advise Stiger About the Parole Consequences of His Guilty Plea.

Stiger's next claims that he should be granted relief from his guilty plea because the trial court did not advise him that he would be ineligible for parole until he had served 85% of his sentence. This claim is likewise without merit. In *Brady v. United States,* 397 U.S. 742 (1970), the Supreme Court indicated that a guilty plea could be deemed voluntary under the Due Process Clause if it was "entered by one fully aware of the direct consequences," and was not

8

induced by threats or improper promises. 397 U.S. at 755. In *Edmonds v. Commonwealth,* 189 S.W.3d 558 (Ky. 2006), we observed that "[a] defendant's eligibility for parole is not a 'direct consequence' of a guilty plea the ignorance of which would render the plea involuntary." 189 S.W.3d at 567 (quoting from *Armstrong v. Egeler,* 563 F.2d 796, 799-800 (6th Cir. 1977)). While the trial court was certainly free to ask the parties whether they had considered the violent offender statute, the trial court's not having done so here does not render Stiger's plea involuntary. *Cf. Smith v. State,* 697 S.E.2d 177 (Ga. 2010) (Post-*Padilla,* the Due Process Clause, as opposed to the Sixth Amendment, still requires only that a defendant pleading guilty be apprised of a guilty plea's direct consequences.).

### III. Counsel's Alleged Misadvice Regarding Parole Eligibility Does Not Entitle Stiger to Relief Because it Was Not Prejudicial.

That brings us then to Stiger's claim that his guilty plea is invalid under the Sixth Amendment of the U.S. Constitution because his attorney misadvised him that if he accepted the Commonwealth's twenty-year plea offer he would be eligible for parole in four years, whereas, because Stiger was pleading guilty to offenses within the violent offender statute, KRS 439.2401, he in fact will not be eligible for parole until he has served seventeen years. As Stiger correctly observes, to be entitled to relief from a guilty plea on the ground of ineffective assistance of counsel, a RCr 11.42 movant must show both that counsel provided deficient assistance and that he, the movant, was prejudiced as a result. *Strickland,* 466 U.S. at 687. As discussed in *Commonwealth v.*

9

*Pridham,* ___ S.W.3d ___, (October 25, 2012) also rendered today, in light of the Supreme Court's application of *Strickland* in *Padilla,* we agree with Stiger that counsel's alleged failure to take the violent offender statute into account when giving advice about parole eligibility would constitute, if proven, deficient performance.

In *Padilla,* the Supreme Court held that counsel's alleged incorrect advice to his non-citizen client that a guilty plea to drug charges would not affect his immigration status, when in fact the drug conviction meant virtually automatic deportation, amounted to deficient performance under *Strickland.* The Court emphasized the penalty-like effect of deportation, the extreme severity of deportation as a sanction, and the close relation of deportation to the criminal sentence, since in many cases, including Padilla's, deportation was a virtually automatic consequence of the conviction. 130 S. Ct. at 1480-83. The Court also noted how, in light of those considerations, a wide array of professional associations concerned with standards of legal practice had come to regard the guilty plea's effect on immigration status as a critical part of the plea advice an attorney provides to a non-citizen. *Id.* at 1482. In *Pridham,* we held that the parole eligibility consequences imposed by the violent offender statute were sufficiently penalty-like, severe, and enmeshed with the sentence to be deemed like deportation, and that the statute was clear and explicit so the consequences could be easily determined by simply reading the statute, as with the relevant statute in *Padilla.* Thus, we held that counsel had a duty accurately to apprise his client of the violent offender statute's effect on his

10

parole eligibility.[2] Counsel's alleged misadvice to Stiger, therefore, would satisfy *Strickland's* deficiency prong.

That is not the end of the matter, however, for under *Strickland* Stiger must also establish that he was prejudiced by counsel's alleged misadvice. To establish prejudice,

> a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [*Strickland* 466 U.S.] at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.,* at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.,* at 687, 104 S. Ct. 2052.

*Harrington v. Richter,* ___ U.S. ___, 131 S. Ct. 770, 787-88 (2011).

In assessing prejudice under *Strickland,*

> the question is not whether a court can be certain counsel's performance had no effect on the outcome . . . Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. [*Strickland*], at 696, 104 S. Ct. 2052. This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' *Id.,* at 693, 697, 104 S. Ct. 2052. The likelihood of a different result must be substantial, not just conceivable. *Id.,* at 693, 104 S. Ct. 2052.

---

[2] We remanded Pridham's case for an evidentiary hearing because he alleged that even if the facts made acquittal unlikely he had a realistic chance of a lower sentence. On remand, the trial court must determine after an evidentiary hearing whether the alleged erroneous advice was, in fact, given and if so whether it would have been rational under the circumstances for Pridham to forego the thirty-year plea bargain for a trial, which would expose him to a sentence of twenty years to life on one charge of manufacturing methamphetamine, second or subsequent offense, a Class A felony.

11

*Harrington,* 131 S. Ct. at 791-92 (citation omitted).

In the guilty plea context, to establish prejudice the challenger must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Premo v. Moore,* ___ U.S. ___, 131 S. Ct. 733, 743 (2011) (quoting from *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366 (1985)). In *Padilla,* the Supreme Court stated that "to obtain relief [on an ineffective assistance claim] a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." 130 S. Ct. at 1485. *See also Williams v. Commonwealth,* 336 S.W.3d 42 (Ky. 2011). As noted above, at the pleading stage it is movant's burden to allege specific facts which, if true, would demonstrate prejudice. A conclusory allegation to the effect that absent the error the movant would have insisted upon a trial is not enough.[3] *See, e.g., United States v. Arteca,* 411 F.3d 315, 322 (2nd Cir. 2005). The movant must allege facts that, if proven, would support a conclusion that the decision to reject the plea bargain and go to trial would have been rational, *e.g.,* valid defenses, a pending suppression motion that could undermine the prosecution's case, or the realistic potential for a lower sentence. We are not persuaded that Stiger has met his burden of alleging prejudice.

---

[3] If the prejudice prong of *Strickland/Hill* were satisfied by the movant simply saying he would not have taken the deal absent the misadvice, it would be rendered essentially meaningless. "Prejudice" requires more than a simple self-serving statement by the movant.

The question is whether, had Stiger been made aware of the violent offender statute and its effect on his eligibility for parole, there is a reasonable probability that he would have rejected the Commonwealth's plea offer and taken his chances at trial. Using *Padilla's* language, would it have been a "rational" decision to reject the twenty-year plea deal under the circumstances? Even at this stage, we can say with assurance that it would not have been a rational decision.

As noted, Stiger faced five counts of first-degree robbery, for all of which the Commonwealth's evidence appears to have been formidable, and an allegation of first-degree PFO. Stiger maintains that there is some question about one of his prior convictions and about the admissibility of his confession to the two video store robberies, but there does not appear to be any doubt that Stiger was at least a second-degree PFO, and there were victims ready to identify him as the perpetrator of at least three of the five robberies. Stiger has alleged no defenses to those three robberies.[4] As a PFO of either degree, had Stiger been convicted of even one first-degree robbery, he would have been subject to a minimum sentence of twenty years—the sentence he received under the plea bargain—and would also have been subject to the violent offender statute's parole eligibility restrictions. It thus appears that Stiger's chances of improving on his outcome by going to trial were not just exceedingly slim, but virtually non-existent. His chances of faring worse, on the other

---

[4] As noted *infra,* two of the robberies involved men who had met Stiger previously and thus knew him although they did not know his name.

13

hand, were considerable. As noted, the Commonwealth had substantial evidence of seven class B felonies, several of which involved significant acts of violence. That evidence together with Stiger's status as a repeat offender would have made for a high risk at trial of a sentence far above the twenty-year minimum. While it is true that even had things gone against Stiger at trial his parole ineligibility would have been extended, at most, from seventeen years to twenty, parole eligibility would not have been his only concern. Stiger was in his twenties at the time of his plea, so the difference between the twenty-year sentence offered to him and the much longer sentence (potentially seventy years or life) he would have risked at trial was very real. Because Stiger thus had little, if any, chance of improving his outcome at trial, but could easily have fared far worse, we are not persuaded that, had he been correctly advised about the parole consequences of his plea, there is a reasonable probability that he would have rejected the plea bargain and insisted upon a trial. It simply would not have been a "rational" choice under the circumstances. *Cf. Premo*, 131 S. Ct. at 744-45 (upholding a state court's finding of no prejudice where the prosecutor's evidence was "strong," the defendant faced "grave punishments" and the plea bargain was for "the statutory minimum for the charged offense.") Having failed adequately to allege any prejudice flowing from counsel's alleged misadvice, Stiger is not entitled to *Strickland* relief.

## CONCLUSION

In sum, although we agree with Stiger that counsel renders deficient assistance under *Padilla* and *Strickland* when his guilty plea advice does not

accurately reflect the parole consequences apparent from a reading of the violent offender statute, the deficient performance alleged in this case does not entitle Stiger to relief, because it could not have resulted in any prejudice. Stiger has not alleged a viable defense to any of the several serious charges against him, so had he faced trial there is no reason to believe that he would or could have fared better than he did by pleading guilty and accepting the minimum possible sentence. Indeed, given the strength of the prosecution's evidence on the multitude of charges, there is every reason to think that he would have fared worse. Under those circumstances, there is no reasonable probability that Stiger with the benefit of correct advice, would have rejected the plea deal and gone to trial. That being the case, it cannot be said that counsel's alleged misadvice induced Stiger's plea. Accordingly, we hereby affirm the decision of the Court of Appeals.

Minton, C.J.; Cunningham, Noble, Scott, and Venters, JJ., concur. Schroder, J., not sitting.

15

COUNSEL FOR APPELLANT:

Amy Robinson Staples
Margaret Anne Ivie
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 301
Frankfort, KY  40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Tami Renee Stetler
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY  40601