# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 17, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0041-DG

COMMONWEALTH OF KENTUCKY                                         APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                              NO. 2019-CA-0525
JEFFERSON CIRCUIT COURT NO. 16-CR-000661


ERIC L. GIBSON                                                   APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>REVERSING</u>**


The Commonwealth appeals the Court of Appeals' reversal of the

Jefferson Circuit Court's denial of Eric L. Gibson's (Gibson) *pro se* motion to

vacate, set aside, or correct his sentence pursuant to RCr[1] 11.42.  After review,

we reverse.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Gibson's underlying convictions are the result of two separate

indictments, 16-CR-0661 and 17-CR-1799.

The first, 16-CR-0661, charged Gibson with being a convicted felon in

possession of a firearm, receiving a stolen firearm, and being a first-degree

persistent felony offender (PFO I).  Gibson was arrested outside The Executive

---

[1] Kentucky Rule of Criminal Procedure.

Club, a nightclub, in the early morning hours of January 24, 2016.  Gibson, a convicted felon, was in possession of a firearm upon his arrest.  Subsequently, the firearm was discovered to have been reported stolen.  A trial on those charges was scheduled for February 14, 2017.  However, in October of 2016, Gibson failed to return to the Jefferson County Jail after being released as a work aide.  He was apprehended five months later at which time he was charged with second-degree escape under indictment 17-CR-1799.

A plea colloquy on both indictments was held in November of 2017.  In exchange for Gibson's guilty plea on all the outstanding charges, the Commonwealth offered to amend the PFO I charge down to a second-degree persistent felony offender charge (PFO II).  In addition, it would recommend five years each on the charges of receiving a stolen firearm and felon in possession of a firearm—both enhanced to ten years each by virtue of the PFO II charge— to run concurrently for a total of ten years.  It would also recommend five years on the second-degree escape charge, which had to run consecutively to the other charges by law.  Gibson's guilty plea would therefore result in a fifteen-year sentence with parole eligibility after he had served 20% of his sentence due to the PFO II charge, as opposed to serving a minimum of ten years which would have been the result of a PFO I conviction.[2]

Before accepting Gibson's guilty plea, the trial court established that Gibson had a twelfth-grade education and could read and write.  The court

---

[2] *See* Kentucky Revised Statute (KRS) 532.080(6)(b).

then placed Gibson under oath and conducted a typical *Boykin*[3] line of questioning. Gibson represented to the court that he was satisfied with his attorney's advice, that he had all the time he needed to talk to his attorney, and that as far as he knew his attorney had done all that Gibson had asked him to do. Gibson further affirmed that he read, understood, and went over the plea agreements with counsel before signing them. Gibson was not under the influence of anything during the plea colloquy and had never been treated for mental health issues, nor had he ever been found to be incompetent by a court. The court explained Gibson's rights as a criminal defendant to him, and he acknowledged that he was giving up those rights, save for his right to an attorney, by pleading guilty. Gibson further agreed that he knew what he was doing by pleading guilty, and felt that doing so was in his best interest. And, no one had coerced him into pleading guilty or made any promises to him for pleading guilty.

The trial court accepted Gibson's pleas of guilty to receiving a stolen handgun, being a felon in possession of a handgun, second-degree escape, and being a PFO II. The court scheduled final sentencing for January of 2018. No motion to withdraw the plea was filed in the interim.[4] At sentencing, the trial court sentenced Gibson in accordance with the Commonwealth's recommendations: a total of fifteen years imprisonment, with parole eligibility

---

[3] *Boykin v. Alabama*, 395 U.S. 238, (1969).

[4] *See* RCr 8.10 ("At any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted.").

after serving 20% of his sentence. The trial court noted Gibson already had accumulated 571 days of time served.

Eight months later, in September of 2018, Gibson filed a *pro se* motion to vacate, set aside, or correct his sentence under RCr 11.42. The trial court denied the motion without holding an evidentiary hearing. A divided Court of Appeals reversed the trial court and held that an evidentiary hearing on Gibson's motion was necessary. The Commonwealth now appeals that ruling to this Court.

Additional facts are discussed below as necessary.

## II. ANALYSIS

Gibson asserts that the trial court erred by denying his RCr 11.42 motion. Specifically, he alleges that his counsel's performance was ineffective to the point of rendering his guilty plea invalid, and that his plea should therefore be vacated. The United States Supreme Court ruled in *Strickland v. Washington* that

> [a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.[5]

---

[5] 466 U.S. 668, 687, (1984).

4

When a defendant pleads guilty, he must satisfy the "prejudice prong" of the *Strickland* test by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[6] When ruling on an RCr 11.42 motion, the trial court must determine "whether the allegations in the motion can be resolved on the face of the record, in which event an evidentiary hearing is not required."[7] An RCr 11.42 motion must "state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds."[8] A trial court must dismiss an RCr 11.42 motion that lacks this requisite specificity.[9] When addressing a trial court's denial of an RCr 11.42 motion, we review a trial court's factual findings for clear error and its application of law to the facts *de novo*.[10]

Gibson primarily presents two arguments: (1) that his counsel failed to raise a choice of evils defense; and (2) that his counsel allowed him to plead

---

[6] *Hill v. Lockhart*, 474 U.S. 52, 58–59, (1985), *accord Bronk v. Commonwealth*, 58 S.W.3d 482, 486-87 (Ky. 2001) ("A showing that counsel's assistance was ineffective in enabling a defendant to intelligently weigh his legal alternatives in deciding to plead guilty has two components: (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.").

[7] *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001).

[8] RCr 11.42(2).

[9] *Id.*

[10] *Stiger v. Commonwealth*, 381 S.W.3d 230, 234 (Ky. 2012).

guilty to a crime he did not commit. Attendant to these arguments are Gibson's claims that his counsel did not know the law and failed to conduct a proper pre-trial investigation of the facts.[11] We will address each argument in turn.

Gibson first asserts that his counsel failed to raise a choice of evils defense. When "the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."[12]

The choice of evils statute, KRS 503.030, provides in pertinent part:

[u]nless inconsistent with the ensuing sections of this code defining justifiable use of physical force or with some other provisions of law, conduct which would otherwise constitute an offense is justifiable when the defendant believes it to be necessary to avoid an imminent public or private injury greater than the injury which is sought to be prevented by the statute defining the offense charged[.][13]

Gibson contends that a choice of evils defense would have been available to him because he feared an imminent attack by an unknown assailant at The Executive Club. He claims this was the sole reason he asked a friend to give him the stolen gun he was ultimately caught with. Gibson's RCr 11.42 motion expounded that

counsel had a duty to investigate pretrial where and how movant had obtained the alleged handgun which had been found on his

---

[11] These arguments were properly preserved by his RCr 11.42 motion. See RCr 9.22.

[12] *Commonwealth v. Elza*, 284 S.W.3d 118, 122 (Ky. 2009).

[13] KRS 503.030(1).

person after the caller called the police. Movant had explained to his attorney that he had got into an argument with a guy in the club, the guy pulled a gun on him and his fiancé, the guy walked outside of the club behind movant and his fiancé, still pointing the weapon at him stating he would shoot both of them. When movant and his fiancé exited the club, movant obtained a weapon from a friend to potentially protect himself and his fiancé from the aggressor...if [counsel] had conducted sufficient investigation of the incident early on he would have uncovered these pertinent facts regarding the incident[.]

[C]ounsel should had (sic) raised the defense of Choice of Evils where evidence clearly existed that movant's conduct was necessitated by a specific and imminent threat of injury to his person under circumstances which left him no reasonable and viable alternative, other than the violation of the law for which he stands charged. The danger presented to movant in the Executive Club by the unknown potential assailant who accosted movant and his fiancé and followed them from out of the club behind them was compelling and imminent, constituting set of circumstances which afforded him little or no alternative other than the commission of the act which otherwise would be unlawful.

This was a spur of the moment situation in which if he would not had armed himself right away he almost certainly would had been shot right then and there on the spot before the police were called to diffuse the situation, locking up movant because the other Individual managed to slip away from the police confrontation before being singled out as the initial aggressor and instigator of the entire incident.

However, as the trial court correctly found, the record directly refutes Gibson's claim. Two 911 calls were included in discovery. At around 3:30 a.m., the owner of The Executive Club called 911 and asked for the police. The owner explained that there was a man waiting outside of the club with a gun in his left front pocket, and that he said he was waiting on someone to come out of the club so that he could shoot them. The man was standing outside of the club waiting for the duration of the four-minute call.

7

The second 911 call was from a male. The caller told dispatch that there was a man waiting outside The Executive Club who claimed he was going to shoot someone when they came out. By the time the second call was made, the police were already arriving on the scene from the first call. The caller watched the police stop the man he was calling about while he was on the phone with dispatch. The man police arrested that morning was Gibson, and the arrest citation noted that he had a handgun sticking out of the left pocket of his pants.

Thus, the record directly refutes Gibson's claim that he feared for his life because an unknown assailant followed him and his fiancé out of the club with a gun pointed at them. Accounts from two independent eyewitnesses claimed Gibson was waiting for someone outside of the club for at least four minutes with the intent to shoot that person when they came outside. Therefore, it is highly unlikely that a choice of evils defense would have even been available to him at trial, let alone be successful. Accordingly, the trial court did not err by finding that Gibson's guilty plea was not rendered invalid due to counsel's failure to raise a choice of evils defense.

Gibson next contends that counsel allowed him to plead guilty to a crime he could not have committed. Specifically, that Gibson did not know or have reason to know that the gun was stolen. Therefore, he argues, he could not be convicted of receiving a stolen firearm, which requires that he knew or had

8

reason to know that the gun was stolen.[14]  More specifically, his RCr 11.42

motion maintained that

> he did not have the requisite knowledge to commit the charged
> offense because he just asked a friend for the weapon because he
> felt that the encounter he had with the individual earlier had
> reached a boiling point to where he needed protection to arm
> himself.  He did not know the handgun was stolen, nor did he have
> reason to believe it had been stolen which are elemental factors to
> committing the offense.
>
> If his trial attorney had conducted basic research which was
> fundamental to his case, investigated the facts of this case and
> applied the law of the statutory provision he would had discovered
>
> that movant could not had been charged with the offense of
> receiving stolen property to begin with, a crime he certainly did not
> commit.
>
> It is clear beyond cavil that trial counsel failed to investigate the
> case [and] interview movant...instead of allowing movant to plead
> guilty to an offense he did not have the requisite knowledge of
> having committed where he in no way knew or had reason to
> believe that it was stolen, thus, if he not pled guilty but would had
> insisted on taking his case to trial he would not had been
> convicted of such offense.
>
> Moreover, movant's trial attorney was ignorant to the point of law
> concerning the statutory elements of "knowing" within KRS
> 514.110, combined with his failure to perform basic research on
> that point of law demonstrates unreasonable performance under
> Strickland.  This is deficient performance.  Prejudice is applied in
> this case when counsel coaxed and coerced movant into pleading
> guilty to an offense he did not commit, KRS 514.110, where he
> received five (5) years, a Class D felony, something he had no
> knowledge that the firearm was stolen, or had reason to believe it
> had been stolen which was something trial counsel failed to
> explain to movant.

---

[14] KRS 514.110(1) ("A person is guilty of receiving stolen property when he receives, retains, or disposes of movable property of another knowing that it has been stolen, or having reason to believe that it has been stolen, unless the property is received, retained, or disposed of with intent to restore it to the owner.")

The Court of Appeals majority held that Gibson's argument was sufficiently specific to warrant an evidentiary hearing. In particular, it held:

> [w]e believe a hearing is necessary in this case. The arguments raised by Appellant are specific in that they claim trial counsel made no effort in this case. Appellant's interactions with his counsel are not apparent from the record and would need to be investigated at a hearing.
>
> Appellant's arguments can be boiled down to the allegation that trial counsel made no investigation into the case...Appellant's interactions with his trial counsel can only be determined by a hearing. Appellant has alleged counsel did not investigate the case, interview witnesses or Appellant himself, discuss the elements of the crimes with which he was charged, or discuss possible defenses. Whether these allegations are true cannot be determined from the record as it is now.[15]

We disagree with this holding.

First, Gibson's motion was not sufficiently specific to satisfy RCr 11.42; *Roach v. Commonwealth* is instructive.[16] Roach challenged the voluntariness of his guilty plea based on his counsel's failure to file a motion to suppress a recorded phone call between Roach and his girlfriend during which he made incriminating statements.[17] Roach claimed the phone call would have been suppressed because his girlfriend's consent to record the conversation was coerced by the police.[18] This Court held:

> Roach has failed to specify facts supporting his claim that the girlfriend's consent was "coerced." He asserts that the police

---

[15] *Gibson v. Commonwealth*, 2019-CA-000525-MR, 2020 WL 113935, *2 (Ky. App. Jan. 10, 2020).

[16] 384 S.W.3d 131 (Ky. 2012).

[17] *Id.* at 139-40.

[18] *Id.* at 140.

10

somehow threatened the girlfriend, **but he fails to allege the threat with any particularity, and it is that level of factual specificity that RCr 11.42(2) requires, for without it the trial court cannot tell whether an evidentiary hearing is necessary**. If general allegations such as "her consent was coerced by police" were sufficient, RCr 11.42 would easily be turned into a discovery device, a result which we have several times noted is contrary to the rule's purpose. Because Roach's motion did not satisfy RCr 11.42(2)'s specificity requirement, it was subject under the rule to "summary dismissal," as the courts below correctly held.[19]

The *Roach* Court noted that the level of particularity that RCr 11.42 requires would have included, for example: "when the girlfriend was threatened; where she was physically at the time of the threat; who else was present; who made the threat or, if the identity of the police officer was unknown, a physical description of the person; and the substance of the threat."[20]

Here, the Court of Appeals found that RCr 11.42's specificity requirement was met by Gibson's claim that "trial counsel made no effort in this case."[21] We cannot dispute the *logic* behind the Court of Appeals' holding: certainly, there is no way to know from the record whether Gibson and his counsel discussed if Gibson knew the gun was stolen, or whether counsel knew that knowledge was an element of receiving a stolen firearm. However, the Court of Appeals failed to recognize that Gibson's motion was not sufficiently specific for the trial court to find that an evidentiary hearing was necessary. Gibson's motion stated that he "asked a friend for the weapon" because he believed "the

---

[19] *Id.* (emphasis added).

[20] *Id.*, n.1.

[21] *Gibson,* at *2.

11

encounter he had with the individual earlier had reached a boiling point to where he needed protection to arm himself." But Gibson failed to provide the name of his "friend" or even a clear timeline of when he got the gun from his friend. He also provided no facts to support that he did not know or have reason to know that the gun was not stolen; for example, that he knew the friend who gave him the gun always carried a gun legally registered to that friend. The bare assertion that he did not know or have reason to know that the gun was stolen was not sufficiently specific to warrant an evidentiary hearing.

Notwithstanding, even if we were to hold that Gibson made a sufficient showing under the "performance prong" of *Strickland*, Gibson has failed to demonstrate that he was prejudiced by his guilty plea. As Judge Maze discussed in his dissent, the Court of Appeals majority altogether failed to address the prejudice component of *Strickland*.[22] This was error, as "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment…any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."[23]

---

[22] *Id*. at *3.

[23] *Strickland*, 466 U.S. at 691–92.

In that vein, Gibson must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[24] Moreover,

> a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. As noted above, at the pleading stage it is movant's burden to allege specific facts which, if true, would demonstrate prejudice. A conclusory allegation to the effect that absent the error the movant would have insisted upon a trial is not enough. The movant must allege facts that, if proven, would support a conclusion that the decision to reject the plea bargain and go to trial would have been rational[.][25]

Gibson's decision to plead guilty in this case guaranteed that he would be sentenced to fifteen years, with parole eligibility after serving 20% of his sentence. To reach this deal, the Commonwealth recommended the minimum sentence for the charge of felon in possession of a handgun,[26] and amended Gibson's charge of being a PFO I down to a PFO II. In contrast, had Gibson insisted on going to trial, he risked being sentenced to the maximum on each charge in addition to a PFO I enhancement:[27] 10 years for being a felon in possession of a handgun; 5 years for receiving a stolen firearm;[28] 5 years for

---

[24] *Lockhart*, 474 U.S. at 58–59.

[25] *Stiger*, 381 S.W.3d at 237 (internal citations and quotation marks omitted).

[26] Being a felon in possession of a handgun is a Class C felony. KRS 527.040. Class C felonies have an available sentence of no less than five and no more than ten years. KRS 532.060(2)(c).

[27] We recognize that a charge of being a felon in possession of a firearm is frequently severed and tried separately from other charged offenses. But for the purpose of this argument we assume all of the charges would be tried together.

[28] Receiving a stolen firearm is a Class D felony. KRS 514.110(2)(c) (amended 2021. Class D felonies have an available sentence of no less than one and no more than five years. KRS 532.060(2)(d).

13

second-degree escape.[29] His sentence would have then been enhanced by his PFO I charge, which would require him to be "sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years."[30]

Further, had he gone to trial, Gibson's defense to the charge of receiving a stolen firearm would have been that he did not know or have reason to know that the gun was stolen. Presumably, the only way Gibson could present this defense to the jury would be to testify on his own behalf. A "prosecutor is entitled to attack a defendant's credibility if the defendant testifies as a witness on his own behalf."[31] Gibson's previous felony convictions were ample. In relevant part, Gibson was convicted in 2003 of one count each of first-degree robbery, attempted murder, second-degree assault, and possession of a firearm by a convicted felon, as well as four counts of wanton endangerment. Gibson was sentenced to twenty-two-years for those crimes, but was apparently released early. In addition, he was convicted of being a felon in possession of a firearm in 1996, and of second-degree escape in 1994. Though these convictions were more than ten years old, if the trial court ruled that their probative value substantially outweighed their prejudicial effect, there is a

---

[29] Second-degree escape is a class D felony. KRS 520.030(2). Class D felonies have an available sentence of no less than one and no more than five years. KRS 532.060(2)(d).

[30] KRS 532.080(6)(b).

[31] *Tamme v. Commonwealth*, 973 S.W.2d 13, 39 (Ky. 1998).

14

possibility that one or all of them could be introduced at trial.[32]  Testifying on his own behalf could therefore present a very high risk of harming his credibility with the jury.

Consequently, Gibson has failed to demonstrate that foregoing his plea deal and insisting on going to trial would have been a rational decision. Accordingly, Gibson has failed to prove that he was prejudiced by any deficiency in his counsel's performance, and we must reverse.

### III.   CONCLUSION

Based on the foregoing, we reverse the Court of Appeals.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

James C. Shackelford
Assistant Attorney General

COUNSEL FOR APPELLEE:

Eric L. Gibson

---

[32] *See* KRE 609(b) ("Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction unless the court determines that the probative value of the conviction substantially outweighs its prejudicial effect.").