RENDERED: DECEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1041-MR

MALCOLM DICKERSON
APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v. HONORABLE ERIC JOSEPH HANER, JUDGE
ACTION NO. 15-CR-001394

COMMONWEALTH OF KENTUCKY
APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND GOODWINE, JUDGES.

CETRULO, JUDGE: Malcolm Dickerson appeals from an order of the Jefferson Circuit Court denying his Kentucky Rule of Criminal Procedure (RCr) 11.42 motion for post-conviction relief. We affirm.

## I. Procedural History

The underlying facts which led to Dickerson's indictment are not germane to the issues in this appeal. Dickerson was indicted for assault in the first

degree for shooting a person; possession of a handgun by a convicted felon; receiving stolen property (specifically, a firearm); three counts of wanton endangerment in the first degree for firing a weapon into a house multiple times; criminal mischief in the first degree; two counts of fleeing or evading police in the first degree; violation of a protective order; and being a first-degree persistent felony offender (PFO I).

Dickerson and the Commonwealth reached a plea agreement, which called for dismissal of the violation of a protective order charge; one of the counts of fleeing or evading police; and the PFO I charge. Dickerson agreed to plead guilty to the remainder of the charges. The agreement, which Dickerson signed, specifically stated that the victim suffered serious physical injuries. The plea agreement recommended Dickerson receive an overall sentence of imprisonment of 20 years, ten of which would be attributable to the assault charge. The trial court sentenced Dickerson in accordance with the plea agreement.

A few months later, Dickerson filed a *pro se* RCr 11.42 motion, alleging his counsel had been ineffective by: 1) not conducting an adequate investigation; and 2) not informing Dickerson that he would not be eligible for parole until he had served at least 85% of his ten-year sentence for first-degree

assault.[1]  In addition to the *pro se* filing, appointed counsel submitted a

supplemental brief on behalf of Dickerson.  After briefing concluded, the trial

court denied Dickerson's RCr 11.42 motion without holding a hearing.  Dickerson

then filed this appeal.

**II.  Analysis**

**A.  Standard of Review**

As our Supreme Court has held:

> To successfully establish the invalidity of a guilty plea
> based upon the allegedly deficient performance of
> defense counsel, the movant must satisfy both prongs of
> the two-part test set forth in *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)
> and restated by this Court in *Bronk v. Commonwealth*, 58
> S.W.3d 482, 486-487 (Ky. 2001).  The movant must
> demonstrate that:  (1) defense counsel's performance fell
> outside the wide range of professionally competent
> assistance; and that (2) a reasonable probability exists
> that, but for the deficient performance of counsel, the
> movant would not have pled guilty, but would have
> insisted on going to trial.  In making that determination,
> the trial court must indulge the strong presumption that
> counsel's conduct fell within the wide range of
> reasonable professional assistance.

---

[1] Kentucky Revised Statute (KRS) 439.3401(1)(c) defines a *violent offender* as a person
convicted of committing a Class B felony involving serious physical injury to the victim.
Dickerson's first-degree assault conviction satisfied that standard.  KRS 439.3401(3)(a) provides
that "[a] violent offender who has been convicted of a . . . Class B felony shall not be released on
. . . parole until he has served at least eighty-five percent (85%) of the sentence imposed."  Thus,
Dickerson was ineligible for parole until serving 85% of his ten-year assault sentence (*i.e.*, 8.5
years).  By contrast, inmates who are not violent offenders, and who do not meet other
exceptions, generally may become eligible for parole after serving 20% of their sentence.  *See*
501 Kentucky Administrative Regulations (KAR) 1:030 § 3(1)(e).

*Commonwealth v. Rank*, 494 S.W.3d 476, 481 (Ky. 2016). If the RCr 11.42 motion "raises a material issue of fact that cannot be resolved on the face of the record, the trial court must grant a prompt hearing." *Id.*

If, as here, the trial court resolves an RCr 11.42 motion without a hearing, "appellate review is limited to whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Haley v. Commonwealth*, 586 S.W.3d 744, 750 (Ky. App. 2019) (internal quotation marks and citation omitted). Our examination of whether Dickerson has raised material questions which are not refuted by the record is hampered because the certified record before us contains no video or audio recordings of any proceedings, such as Dickerson's guilty plea hearing. "[I]t is an appellant's responsibility to ensure that the record contains all of the materials necessary for an appellate court to rule upon all the issues raised. . . . [W]e are required to assume that any portion of the record not supplied to us supports the decision of the trial court." *Clark v. Commonwealth*, 223 S.W.3d 90, 102 (Ky. 2007) (footnote and citations omitted).

Finally, our analysis is not identical to that employed by the trial court, but our Supreme Court has held that "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different

grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

### B. Counsel's Alleged Failure to Investigate

The gist of Dickerson's first argument is that the record does not show that counsel adequately investigated two main issues:  1) whether the shooting victim suffered a serious physical injury; and 2) the possibility of a self-defense claim.  The record does not contain a detailed recitation of the investigation of Dickerson's counsel, but he nonetheless is not entitled to relief.

The only specific action Dickerson alleges counsel failed to take was to interview the victim, a topic to which we shall return.  Otherwise, Dickerson only offers conjecture that some sort of additional, undefined investigation might somehow have resulted in an acquittal.  Left wholly unanswered is even a cursory explanation of how that result would have been possible with more investigation.

Instead, "Appellant's claims are nothing more than bold assertions without any factual basis.  Such does not justify an evidentiary hearing pursuant to RCr 11.42." *Harper v. Commonwealth*, 978 S.W.2d 311, 317 (Ky. 1998).  We will not scour the record or attempt to flesh out underdeveloped arguments.  *See, e.g.*, *Prescott v. Commonwealth*, 572 S.W.3d 913, 923 (Ky. App. 2019).  In other words, "[m]ere speculation as to how other counsel might have performed either better or differently without any indication of what favorable facts would have

resulted is not sufficient. Conjecture that a different strategy might have proved beneficial is also not sufficient." *Hodge v. Commonwealth*, 116 S.W.3d 463, 470 (Ky. 2003), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

Moreover, even on the merits, Dickerson is not entitled to relief. First, there is nothing in the record to cast doubt on whether the victim suffered a serious physical injury. *Serious physical injury* means "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(17).[2]

We cannot interpret a statute in a manner which "defies common sense." *Matheney v. Commonwealth*, 191 S.W.3d 599, 603 (Ky. 2006). Common sense and human experience would lead a reasonable person to conclude that getting shot in the chest – an area of the body containing many vital organs – creates a substantial risk of death.[3]

---

[2] KRS 500.080 was recently amended, but those changes do not impact this case, so we quote the current version.

[3] Dickerson contends in his brief that the victim was shot in the shoulder. By contrast, the victim's hospital records submitted by the Commonwealth in response to Dickerson's RCr 11.42 motion explicitly state that the victim was shot in the chest.

Although not every gunshot injury is automatically deemed to be a serious physical injury, the Commonwealth provided the victim's medical records to Dickerson's counsel in discovery. The entirety of those medical records is not in the record before us. However, the one page which was provided indicates the victim was shot in the chest, required needle decompression in the field by EMS personnel, had a tube placed in his chest "emergently" in the emergency department, and was admitted to the ICU. Record at 168. Moreover, the Commonwealth notified Dickerson in discovery that it intended to offer the expert testimony of Dr. William Smock, a professor at the University of Louisville School of Medicine, opining unequivocally that the victim suffered a serious physical injury. Specifically, Dr. Smock sent an email to the Commonwealth stating: "Easy Assault 1, he [the victim] would have died without EMS and ER intervention."

Finally, the plea agreement – which Dickerson signed – specifically states that the shooting victim suffered a serious physical injury. The trial court's judgment confirms that, at the guilty plea proceeding, Dickerson admitted he had committed first-degree assault – which statutorily requires the victim to suffer a serious physical injury. Furthermore, before accepting the plea, the court reviewed the charges and offer to ensure that Dickerson understood and voluntarily wished to plead guilty. *See, e.g.*, RCr 8.08. In other words, the original trial court could

not have properly allowed Dickerson to plead guilty to first-degree assault, which statutorily requires the victim to have sustained a serious physical injury, if Dickerson refused to admit the victim's injuries were serious.

Dickerson castigates his counsel for allegedly not interviewing the victim. However, "the test for effectiveness is not whether counsel could have done more, . . . but rather whether counsel's errors undermined the reliability of the trial." *Baze v. Commonwealth*, 23 S.W.3d 619, 625 (Ky. 2000), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009) (citations omitted). Dickerson has not demonstrated what would have been gleaned from interviewing the victim. In light of the evidence that the victim suffered a serious physical injury, as defined by statute, Dickerson has not shown that counsel's allegedly insufficient investigation undermined the reliability of the proceedings.

The same conclusion applies to Dickerson's self-defense argument, which is even less developed than his serious physical injury argument. Indeed, Dickerson offers no explanation whatsoever as to how it would have been potentially wise for him to have relied on a self-defense theory and not pled guilty. He has produced no witness statements, police reports, or hospital records supporting this theory. We will not scour the record or attempt to flesh out underdeveloped arguments. *Prescott*, 572 S.W.3d at 923.

## C. Parole Eligibility

Finally, Dickerson argues his counsel was ineffective in not telling him that the terms of the plea agreement would result in being classified as a violent offender and, as such, he would not be eligible for parole until serving 85% of his ten-year sentence for assault. It is accurate that counsel may be deemed ineffective for not conveying to a defendant the consequences of a guilty plea on his or her parole eligibility. *See, e.g.*, *Stiger v. Commonwealth*, 381 S.W.3d 230, 236 (Ky. 2012).

However, as our Supreme Court has explained, to show ineffective assistance of counsel in this context, Dickerson "must allege facts that, if proven, would support a conclusion that the decision to reject the plea bargain and go to trial would have been rational, *e.g.*, valid defenses, a pending suppression motion that could undermine the prosecution's case, or the realistic potential for a lower sentence." *Id.* at 237. Dickerson has not made that showing.

Dickerson cites to nothing to show there was a realistic possibility he could have received a lower sentence. Indeed, as a Class B felony, ten years is the minimum sentence for assault in the first degree.

If Dickerson had proceeded to trial and been convicted of assault in the first degree and found to be a PFO I, he would have received *at least* 20 years of imprisonment. KRS 532.080(6)(a). Upon conviction of assault in the first

degree and being a PFO I, Dickerson would not have been eligible for parole until he served *at least* 17 years (20 years x 0.85 = 17 years). KRS 532.080(7) provides "[a] violent offender who is found to be a persistent felony offender in the first degree shall not be eligible for parole except as provided in KRS 439.3401." KRS 439.3401(3)(a) provides "[a] violent offender who has been convicted of a . . . Class B felony shall not be released on probation or parole until he has served at least eighty-five percent (85%) of the sentence imposed."

In short, by rejecting the plea and proceeding to trial, Dickerson would have actually <u>delayed</u> his parole eligibility date. To prevail, an appellant must convince the court that rejecting the plea agreement would have occurred but for counsel's errors and would have been "rational under the circumstances." *Stiger*, 381 S.W.3d at 237. Dickerson has not demonstrated that it would have been rational to reject the plea agreement in this instance.

For the foregoing reasons, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

Kara Stinson Lewis         Daniel Cameron
La Grange, Kentucky       Attorney General of Kentucky

                              Stephanie L. McKeehan
                              Assistant Attorney General
                              Frankfort, Kentucky