# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: JUNE 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0413-MR

TIMOTHY L. DELEHANTY                                                    APPELLANT

V.

ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE MARY K. MOLLOY, JUDGE
NOS. 24-CR-00211 & 24-CR-00417

COMMONWEALTH OF KENTUCKY                                        APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Timothy Lee Delehanty ("Delehanty") appeals from two final judgments entered on August 13, 2024. On appeal, Delehanty argues the circuit court erred in denying his motions to withdraw his guilty pleas and his request to represent himself. Finding no error, we affirm.

## I.     BACKGROUND

In March 2024, Delehanty was indicted for the 2006 murder of Paul Clayton ("Clayton"), following his confession.[1] While in custody awaiting disposition of the murder charge, Delehanty viciously attacked another inmate. The attack was captured on video surveillance. He was subsequently indicted

---

[1] According to the Uniform Citation, "Covington Police received a call from St. [Elizabeth Hospital] … in reference to [Delehanty] leaving with an IV in his arm. On arrival, [Delehanty] confessed to killing Paul Clayton in 2006 and wanted to talk about it …. [Delehanty] stated he stabbed the victim 50-60 times inside the victim's residence. [Delehanty] stated he then fled the scene in the victim's vehicle." Record in 24-CR-00211 (R.) at 4.

on charges of attempted murder, first-degree strangulation, second-degree assault, and being a first-degree persistent felony offender.[2]

On May 20, 2024, Delehanty appeared in court with counsel to enter guilty pleas in both cases. On the original murder charge, the Commonwealth offered Delehanty a life sentence that would run concurrently with the new charges in 24-CR-0017. In that case, the Commonwealth offered Delehanty ten years on the three underlying charges, enhanced to life imprisonment by the persistent felony offender charge, and agreed that the sentence would run concurrently with the murder charge.

Delehanty had to be arraigned on the new case before he could plead guilty to both. During arraignment, defense counsel, Stephen Florian ("Florian") informed the circuit court that he had received and reviewed the discovery on both cases, including the video surveillance from the jail showing the acts which led to the new indictment. Delehanty was then placed under oath, and the plea colloquy commenced. As part of the plea colloquy, the court asked Delehanty what he did to be guilty. In response to the murder charge, Delehanty responded, "I killed Paul Clayton." He also admitted that he confessed to the murder to the police. As to the attempted murder case, Delehanty told the court that he "attacked Johnathan Maskiell." Following the plea colloquy, the court found that Delehanty's pleas were knowingly, intelligently, and voluntarily made.

---

[2] 24-CR-00417.

When Delehanty appeared for sentencing a couple of months later, he had new counsel, Jeffery Lawson ("Lawson"). He informed the court that the Department of Public Advocacy (DPA) had appointed him as conflict counsel because Delehanty wanted to withdraw his guilty pleas. Lawson requested and was granted a two-week continuance to file a written motion, which he subsequently submitted.

On August 12, 2024, Delehanty appeared in court with Lawson for sentencing. When the court called the matter, it stated that Delehanty was present for sentencing and noted that a motion to withdraw his guilty plea had been filed in one of the cases. It inquired if Delehanty still wished to proceed with the motion to withdraw his guilty plea, and Delehanty affirmed that he did. The Commonwealth pointed out that Delehanty had not filed his motion in the attempted murder case and expressed its intention to proceed with sentencing for that case.

The court acknowledged that no motion had been filed in the attempted murder case and began sentencing Delehanty. He became agitated. In what seemed to be a moment of panic, believing he was about to be sentenced, Delehanty stood up, objected, and told the court he wanted to object pro se. The trial court instructed him to sit down and be quiet. Delehanty insisted that he be allowed to "address the court" pro se because his counsel was not saying anything. The video shows that Lawson tried to interject, but Delehanty kept speaking over him. At the same time, the court instructed Delehanty to sit down and be quiet, but he would not and persisted, stating that he had a right

3

to object and proceed pro se. Four deputy sheriffs surrounded Delehanty and attempted to sit him down while he continued to resist. One of the deputies inquired of the court whether it wanted him taken back. The court asked Delehanty if he was going to behave and when there was no response told the deputies to "roll him back up to the table."

Lawson finally managed to interject and object on Delehanty's behalf. He informed the court that any failure to file the motion related to the attempted murder case was an error on his part. He made an oral motion to combine the second case with the motion to withdraw, acknowledging that the omission of the second case number was simply a clerical error. Delehanty agreed that it was indeed a clerical mistake. The court granted counsel's request and agreed to hear the motion to withdraw for both cases. Then, Delehanty thanked the court but briefly continued to interrupt and speak over the court and Lawson, though not regarding his desire to represent himself. Instead, he accused the court of being biased and believed it had already made up its mind about his case and said he was "entitled to an impartial decisionmaker." The court assured him that it was an "impartial decisionmaker."

Lawson interjected and asked the court to place Delehanty under oath so that testimony could begin. Delehanty didn't object or insist he represent himself. Rather, he raised his right hand and took the oath. Once under oath, Delehanty answered his counsel's questions about what happened before he pleaded guilty. He admitted to confessing to killing Clayton once again. He stated that he and Florian met only twice. He acknowledged discussing

4

defenses to the murder charge with Florian, primarily regarding his mental state during the murder in 2006, when he was 19 years old. He testified that they considered hiring a mental health expert to review his mental health treatment records from that time.

Delehanty claimed that Florian raised the issue of plea discussions shortly after the case began. Florian disputed that and insisted that Delehanty approached him about resolving both cases shortly after being indicted on the attempted murder charge. Thereafter, Florian spoke to the Commonwealth, who advised him that he was considering adding an aggravator to Delehanty's murder charge—specifically, the robbery for stealing Clayton's vehicle. Florian explained to Delehanty how an aggravator would affect his parole eligibility. The Commonwealth informed Florian that he would reindict and add the aggravator if Delehanty did not accept the plea offer. Florian also told Delehanty that he could face the death penalty if the aggravator was added.

Delehanty testified that he did not initially agree to plead guilty. Instead, he and Florian continued discussing defenses, such as extreme emotional disturbance. He was aware that Florian had secured funding to hire an expert, but that expert never assessed him. He stated that Florian also advised him that if he went to trial on both cases and was convicted, he would have to serve his time consecutively. However, the Commonwealth would agree to concurrent sentences if he accepted the plea deals.

Ultimately, Delehanty testified that he believed 20 years until parole eligibility was preferable to 30 years. He stated that they never discussed the

attempted murder case at all. Florian informed him that they needed to prioritize the murder case and would address the other one later. In the end, Delehanty testified that he accepted the plea offers because Florian told him they were the best offers he would receive, and if he went to trial, the Commonwealth could pursue the death penalty or life without the possibility of parole. Delehanty admitted that he did not want to risk that.

During cross-examination, the Commonwealth highlighted that, based on Delehanty's own testimony and despite his current claims, he understood what an aggravator was and how it would impact his penalty range and parole eligibility prior to entering the plea. Delehanty also admitted that he never asserted a defense against the charges of attempted murder, strangulation, and assault.

Florian also testified, stating that when he first attempted to meet with Delehanty, the latter refused to see him. They had a preliminary hearing regarding the murder charge, during which evidence was presented, including Delehanty's confession. After the hearing, Florian concentrated on developing a mental health defense based on what Delehanty shared about his state of mind around the time of the murder. Delehanty signed multiple medical releases, and Florian had his investigator request records, resulting in thousands of pages of documents. Although Florian could not be certain that they received all the records before the plea entry, his review indicated that any mental health issues Delehanty faced at the time of the homicide were drug-induced, with no evidence of psychosis.

Nonetheless, in preparation for a trial defense, Florian obtained funds to hire a mental health expert to review the records. But before the expert could do so, Delehanty contacted Florian and told him he wanted to resolve his cases. Delehanty made this declaration shortly after the attempted murder case came about. Until then, Florian was operating under the impression that they were going to trial.

Florian negotiated on Delehanty's behalf for about a month or two but was unable to secure an agreement due to Delehanty's preference for a term of years—25 to 30. Before the attempted murder case, the Commonwealth would not agree to anything less than life without parole for 25 years. After the new case emerged, the Commonwealth sought life without the possibility of parole. Ultimately, Florian secured an offer for concurrent life sentences, which would allow Delehanty to be eligible for parole after serving 20 years.

Florian testified that he discussed aggravators with Delehanty and explained the enhanced penalties that could result, including life without parole and the death penalty. However, when Delehanty attempted to murder a fellow inmate, which was captured on video surveillance, his bargaining power nearly vanished.

Florian reviewed the surveillance video of the attempted murder and believed there was no defense. Although Maskiell's injuries were not as serious as initially thought, Florian understood and explained to Delehanty that even if he secured a plea for a term of years on the murder charge, Delehanty would still face life without parole for the attempted murder as a first-degree

7

persistent felony offender. Furthermore, the two sentences would need to be served consecutively. Considering the severity of Delehanty's charges and the potential for aggravating enhancements, Florian agreed that the pleas were in Delehanty's best interest.

After hearing arguments from both sides, the court informed the parties that it had reviewed the matter and the plea colloquy. It noted that Delehanty responded to the questions during the plea without hesitation. Both he and Florian informed the court that they had discussed the possible defenses. The court also found that Florian and Delehanty discussed possible aggravators, including the death penalty, before entering the plea. The court ruled that Delehanty's pleas were made knowingly, intelligently, and voluntarily. The court denied his motions to withdraw the pleas and proceeded with sentencing.

Delehanty was sentenced to life in prison for the murder charge. He was sentenced to ten years on the attempted murder charge, enhanced to life in prison by the first-degree persistent felony offender charge; ten years for first-degree strangulation, enhanced to twenty years by the first-degree persistent felony offender charge; and ten years on the second-degree assault, enhanced to twenty years by the first-degree persistent felony offender charge. The trial court ran the life sentences concurrently. Delehanty now appeals as a matter of right.[3] Additional facts will be set forth as necessary below.

---

[3] *See* KY. CONST. § 110(2)(b).

Delehanty raises two issues on appeal: (1) that the trial court erred in denying his motions to withdraw his pleas, and (2) that he was entitled to a *Faretta* hearing on his pro se request to represent himself.

## II.   ANALYSIS

Under Kentucky law, a plea must be knowing, intelligent, and voluntary to be valid. *Williams v. Commonwealth*, 229 S.W.3d 49, 50-51 (Ky. 2007) (citations omitted). Before accepting a plea, a trial court must determine that the defendant made it voluntarily and understood the nature of the charge. RCr 8.08.

"At any time before judgment the court may permit the plea of guilty . . . to be withdrawn and a plea of not guilty substituted." RCr 8.10. When a defendant moves to withdraw his or her guilty plea before sentencing, the court must hold a hearing to determine whether the plea was entered voluntarily. *Porter v. Commonwealth*, 394 S.W.3d 382, 385 (Ky. 2011) (citation omitted).  If the court finds the plea was involuntary, it has no discretion and must grant the withdrawal motion.  *Id.* at 385-86 (citation omitted). A guilty plea that is the actual product of a threat or promise is involuntary. *Johnson v. Commonwealth*, 412 S.W.3d 157, 164 (Ky. 2013) (citation omitted).  However, if the trial court determines the plea was voluntary, it may deny the motion to withdraw according to its discretion. *Williams*, 229 S.W.3d at 51 (citation omitted).

When deciding whether a guilty plea is voluntary, the trial court considers the totality of the circumstances surrounding the plea. *Bronk v.*

9

*Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001) (footnote omitted). Sworn declarations by the defendant in open court that his or her guilty plea is made voluntarily "carry a strong presumption of verity." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 569 (Ky. 2006) (citations omitted). Accordingly, an appellate court reviews a trial court's finding regarding voluntariness for clear error, "whether the determination was supported by substantial evidence." *Porter*, 394 S.W.3d at 386 (citation omitted).

We first analyze whether the trial court correctly determined that Delehanty's plea was voluntary. Next, we analyze whether the court erred when it denied Delehanty's motion to withdraw his plea.

**A.    The trial court did not err when it found Delehanty's guilty plea was entered voluntarily.**

"Due process requires a trial court to make an affirmative showing, on the record, that a guilty plea is voluntary and intelligent before it may be accepted." *Edmonds*, 189 S.W.3d at 565 (footnote omitted) (citing *Boykin v. Alabama*, 395 U.S. 238, 241-42 (1969)). What matters is whether a defendant makes a knowing waiver of his or her constitutional rights and manifests a voluntary and intelligent desire to enter the plea.

The trial court's finding that Delehanty's guilty plea was entered voluntarily is supported by substantial evidence. The court conducted a thorough *Boykin* colloquy, assessing Delehanty's competency, understanding of his rights, and his voluntary desire to enter a guilty plea. Delehanty admitted under oath and in open court that he engaged in the charged conduct and wished to be sentenced according to the Commonwealth's recommendation.

10

Furthermore, Delehanty testified that no force, threats, or promises had been made to induce him to plead guilty and that he was doing so of his own free will. Because substantial evidence supports the trial court's finding of voluntariness, no clear error exists. The record reflects that Delehanty knowingly waived his rights and entered his plea voluntarily and intelligently.

**B. The trial court did not abuse its discretion when it denied Delehanty's motion to withdraw his guilty plea.**

A trial court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. *Prater v. Commonwealth*, 421 S.W.3d 380, 387 (Ky. 2014) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted). "[T]his standard assumes the trial court is empowered to make a decision—of its choosing—that falls within a range of permissible decisions." *Commonwealth v. Roark*, 641 S.W.3d 94, 97 (Ky. 2021) (internal quotation marks and citation omitted).

When a defendant claims that his guilty plea was involuntary, "a proper exercise of this discretion requires trial courts to consider the totality of the circumstances surrounding the guilty plea and to juxtapose the presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v. Washington* inquiry into the performance of counsel[.]" *Bronk*, 58 S.W.3d at 486 (Ky. 2001) (footnotes omitted). This requires the trial court to determine (1) whether the attorney made errors that caused his performance to fall "outside the wide range of professionally competent assistance[,]" and (2)

11

whether, but for those serious errors, "there is a reasonable probability that the defendant would not have pleaded guilty but would have insisted on going to trial." *Id.* at 486-87 (footnote omitted).

Courts look to objective criteria rather than a particular defendant's subjective criteria. "In the guilty plea context . . . 'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Stiger v. Commonwealth*, 381 S.W.3d 230, 237 (Ky. 2012) (citations omitted). For this reason, "[a] conclusory allegation to the effect that absent the error the movant would have insisted upon a trial is not enough." *Id.* (footnote and citation omitted).

Delehanty does not address the two-part analysis outlined by this Court in *Bronk*. 58 S.W.3d at 486-87. Rather, he mainly focuses on the errors Florian allegedly made that resulted in his performance falling "outside the wide range of professionally competent assistance." Delehanty alleges the following:

> (1) Florian did not review the mental health records with Delehanty;
> (2) Florian did not discuss possible defenses to the attempted murder charge;
> (3) Florian did not discuss the elements of the strangulation charge;
> (4) Florian advised Delehanty that a life sentence was the best deal he would get;
> (5) Florian advised Delehanty of being subject to the death penalty if he proceeded to trial; and
> (6) Florian did not discuss any possible lesser included offenses of the attempted murder charge.

Appellant's Brief, pp. 3-9.

12

Delehanty's list of complaints fails to show that his counsel was ineffective in advising Delehanty to plead guilty. Moreover, this list of complaints is contrary to Florian's testimony during the evidentiary hearing. Florian's testimony refutes Delehanty's allegations. He testified that after the preliminary hearing, he concentrated on developing a mental health defense based on what Delehanty shared about his state of mind around the time of the murder. He provided Delehanty with multiple medical releases, which he signed, and Florian had his investigator request records, resulting in thousands of pages of documents. Florian testified that his review of the medical records indicated that any mental health issues Delehanty faced at the time of the homicide were drug-induced, with no evidence of psychosis.

Despite that, and in preparation for a defense, Florian testified that he obtained funds to hire a mental health expert to review the records. But before the expert could do so, Delehanty contacted Florian and told him he wanted to resolve his cases. Florian negotiated on Delehanty's behalf for about a month or two but was unable to secure an agreement due to Delehanty's preference for a term of years—25 to 30. Before the attempted murder case, the Commonwealth would not agree to anything less than life without parole for 25 years. After the new case emerged, the Commonwealth sought life without the possibility of parole. Ultimately, Florian secured an offer for concurrent life sentences, which would allow Delehanty to be eligible for parole after serving 20 years.

Florian testified that he discussed aggravators with Delehanty and explained the enhanced penalties that could result, including life without parole and the death penalty. However, when Delehanty attempted to murder a fellow inmate, which was captured on video surveillance, his bargaining power nearly vanished.

Florian reviewed the surveillance video of the attempted murder and believed there was no defense. Florian understood and explained to Delehanty that even if he secured a plea for a term of years on the murder charge, Delehanty would still face life without parole for the attempted murder as a first-degree persistent felony offender. Furthermore, the two sentences would need to be served consecutively. Considering the severity of Delehanty's charges and the potential for aggravating enhancements, Florian agreed that the pleas were in Delehanty's best interest.

Not only has Delehanty failed to show that his attorney made any errors, but he certainly has not shown that Florian made errors so serious that "there is a reasonable probability that [he] would not have pleaded guilty but would have insisted on going to trial." *Bronk*, 58 S.W.3d at 486-87. Delehanty does not suggest any defenses he might have had to the attempted murder and strangulation charges because there were none. He admitted to the murder, repeatedly. The unprovoked attempted murder, strangulation, and second-degree assault were caught on video. A conclusory allegation that he would have insisted on going to trial is insufficient. *Stiger*, 381 S.W.3d at 237. (footnote and citation omitted).

14

Considering the totality of the circumstances, Delehanty has not provided any evidence to this Court that his "decision to reject the plea bargain would have been rational under the circumstances." *Id.* (citations omitted). The trial court did not abuse its discretion in denying his motions to withdraw his pleas. Here, the trial court properly held a hearing where Delehanty and his attorney were permitted to testify as to his reasons for entering a guilty plea and the Commonwealth was permitted to cross-examine both.

After considering the testimony, arguments from counsel, as well as Delehanty's plea colloquy, the trial court denied the motion to withdraw. The trial court found that Delehanty's testimony was not credible based on its findings that Delehanty had previously testified that his plea was not induced by threat or fear and that Delehanty was an evasive witness. The trial court's reasoning was not arbitrary, unreasonable, or unsupported by sound legal principles.

Moreover, denying Delehanty's motion and sentencing him according to his bargained for plea agreement with the Commonwealth was not unfair because Delehanty might have received up to double the sentence he received (life without the possibility of parole, or death) for one of the sentences and up to a life sentence to be served consecutively for the subsequent offense. Instead, he received concurrent life sentences. Rejecting the plea bargain would not have been rational under the circumstances. *Stiger*, 381 S.W.3d at 237 (citations omitted). Thus, the trial court did not err when it denied Delehanty's motion to withdraw his guilty plea.

15

**C.** **The trial court did not err in denying Delehanty's motion for a *Faretta*[4] hearing.**

Finally, Delehanty contends the trial court erred in failing to conduct a *Faretta* hearing after he requested to proceed pro se. The Commonwealth contends Delehanty abandoned this claim. We agree. A criminal defendant has a right to be represented by counsel at trial and "every critical stage of the proceedings". *Stone v. Commonwealth,* 217 S.W.3d 233, 237 (Ky. 2007) (citations omitted). Conversely, the right to counsel includes the right to represent oneself. *Faretta,* 422 U.S. at 819, 95 S.Ct. at 2533; KY. CONST. § 11 ("In all criminal prosecutions the accused has the right to be heard by himself and counsel. . . .").

A defendant has a right to waive counsel when he or she voluntarily and intelligently elects to do so. *Faretta,* 422 U.S. at 835 (citations omitted). However, "courts indulge 'every reasonable presumption against a waiver of counsel.'" *Winstead v. Commonwealth,* 283 S.W.3d 678, 683 (Ky. 2009) (citation omitted). To overcome the presumption against waiver, "[a] request to proceed pro se or with counsel in a limited fashion must be timely and unequivocal." *Deno v. Commonwealth,* 177 S.W.3d 753, 757-58 (Ky. 2005) (footnote omitted). "It is not enough to express dissatisfaction with counsel or to request different counsel; the defendant, rather, must unequivocally ask to proceed *pro se."* *Winstead,* 283 S.W.3d at 683 (citations omitted).

---

[4] *Faretta v. California,* 422 U.S. 806 (1975).

16

Arguably, Delehanty unequivocally asked to proceed pro se. "[O]nce a defendant invokes his right to proceed pro se, in whole or part, the trial court is required to hold the *Faretta* hearing and allow the defendant to exercise the right, if at all possible." *Swan v. Commonwealth*, 384 S.W.3d 77, 93 (Ky. 2012) (citations omitted). However, the request can also be abandoned or waived "through subsequent conduct after an initial request[.]" *Id.* (quoting *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982)).

In *Swan*, this Court adopted the rule outlined by the Fifth Circuit in *Brown*: "Even if [a] defendant requests to represent himself ... the right may be waived through [the] defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether." *Id.* at 94 (alterations and omissions in original) (quoting *Brown*, 291 F.2d at 611). And not every invocation requires a *Faretta* hearing. "The invocation of the right and whether the proper procedures were followed must be evaluated in the context of a given case." *Id.* at 94-95. Even though the right to represent oneself is structural, "it must still be applied in the real world, which sometimes requires a practical approach, not an absolute and unbending one." *Id.* at 95.

The Commonwealth argues that Delehanty's request to represent himself was for purposes of delay and was later abandoned. After watching the evidentiary hearing, we conclude that Delehanty's request to represent himself was a reaction to the court's initial attempt to sentence him in the attempted murder case. The court believed Delehanty had not filed a motion in that case

17

because defense counsel mistakenly omitted the case number and the court attempted to proceed with sentencing. Delehanty was visibly agitated and panicked, thinking his attorney was not advocating for him. So, he interrupted the court and asked to speak pro se. He wanted to get the court's attention for purposes of letting the court know that he intended to file the motion to withdraw his guilty plea in the attempted murder case. The court instructed him to sit down and be quiet, but he persisted, despite Lawson's attempt to interject. The trial court acknowledged that if he wanted to proceed pro se, that it needed to have a hearing and that it was not going to have one at that time.

A *Faretta* hearing was not warranted at that time because once the court granted Lawson's request to hear the motion in both cases, Delehanty abandoned his request to proceed pro se. He even thanked the judge for allowing the hearing of both cases. He was satisfied that his attorney was representing his interest. For the remaining 50 minutes, Delehanty testified and collaborated with defense counsel in questioning Florian. Moreover, Delehanty has not indicated what he would have done differently than Lawson had the trial court stopped the evidentiary hearing, granted him a *Faretta* hearing, and allowed him to proceed pro se.

Under the facts of this case, Delehanty's request to represent himself was abandoned. *Swan*, 384 S.W.3d at 94. Thus, the trial court did not err in not conducting a *Faretta* hearing.

18

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Kenton Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Travis Bewley
Kathleen Kallaher Schmidt
Assistant Public Advocates


COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General